Kenneth A. STOECKLIN, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 88–3201

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Feb. 16, 1989.

William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Chief, Tax Div., Dept. of Justice, Robert S. Pomerance, Calvin C. Curtis, Washington, D.C., for respondent-appellee.

Before TJOFLAT, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

*Pro se* appellant Kenneth A. Stoecklin (Stoecklin), who has been a certified public accountant for over thirty years, appeals the decision of the tax court that he was liable for income tax deficiencies for each of the years 1978–81. Record, Doc. 62.

### I. Facts

In November 1977, Stoecklin formed the Kenneth A. Stoecklin Equity Trust and conveyed to the trust his lifetime services.[1] Stoecklin's wife and James P. Manson were appointed as trustees. The trustees appointed Stoecklin manager of the trust with the power to conduct trust business. Stoecklin assigned the beneficial units of the trust to his family members and to Howard E. Liebelt. Notably, no distributions were ever made from the trust to these units. Stoecklin was soon added as a third trustee. Within the next year, however, his wife resigned from the board.[2] Liebelt was then appointed as a replacement trustee on August 21, 1978. Manson resigned shortly thereafter leaving Liebelt and Stoecklin as trustees. Record, Doc. 54 at 4–10.

On December 12, 1977, Stoecklin incorporated his accounting practice as Kenneth A. Stoecklin, C.P.A., P.C., in which he was the

---

1. Stoecklin's wife also conveyed all her interests in his real and personal property to him which he conveyed to the trust.

2. Stoecklin and his wife were divorced in 1978.

sole shareholder and employee. In a December 16, 1977 agreement, the corporation agreed to pay the trust 250 silver dollars per month for Stoecklin's services as an accountant. The trust then paid Stoecklin 250 silver dollars per month for approximately five years. Stoecklin reported only the face value of the silver dollars on his income tax return. *Id.* at 10–11, 18. The corporation, however, paid the market value for the silver dollars and deducted these expenditures as corporate expenses.[3] The agreement was terminated on September 30, 1982 because payments were greatly in arrears and the market price of silver dollars had become prohibitively expensive.

On December 12, 1983, the IRS issued to Stoecklin a notice of income tax deficiency as a result of reallocating to Stoecklin certain items of trust income (apart from the silver dollars).[4] Stoecklin filed a petition in the United States Tax Court objecting to jurisdiction and contesting the deficiencies. Record, Doc. 2.

After the IRS answered the petition, Stoecklin filed a motion to dismiss in which he asserted the IRS lacked jurisdiction and that he was not subject to the income tax laws. The court denied the motion. Record, Doc. 16.

On January 22, 1984, the IRS filed a motion for leave to seek an increased deficiency because the IRS had discovered that the corporation paid the trust in silver dollars. The IRS asserted that the corporation deducted as an expense the full amount paid for the silver dollars while the trust reported as income only their much lower face value. In turn, Stoecklin reported only the coins' face value. The IRS alleged it learned of the silver dollar transactions during the November 1983 meetings with Stoecklin. The tax court granted the motion and the IRS amended its answer. Record, Docs. 29, 30.

After a February 27, 1985 trial, the tax court found that the Stoecklin trust document was "strikingly similar" to those in published cases holding that such trusts were ineffective to shift income from the taxpayer to the trust. The court also found that the trust had no meaningful control over Stoecklin's work as an accountant and that Stoecklin had assigned his lifetime services to the trust in form only. The court accepted Liebelt's testimony that Stoecklin alone managed the trust's affairs and rejected Stoecklin's testimony that Liebelt was an adverse trustee. The court accordingly found that Stoecklin had sole effective control of both the trust and the corporation and that the trust income should be taxed to him. Record, Doc. 54 at 15–23. The tax court found, alternatively, that the trust income could be attributed to Stoecklin under the grantor trust rules of 26 U.S.C. §§ 671 *et seq.,* which require the trust to be treated as the property of the grantor when the grantor can exercise administrative powers over the trust without the consent of an adverse party. *Id.* The court rejected Stoecklin's argument that the silver dollars were legal tender which could be taxed only at face value and held that the silver dollars were taxable as income at their market value. *Id.* at 18–19.

## II. Issues

A. Whether the tax court properly denied Stoecklin's motion to dismiss?

Stoecklin raises a number of issues on appeal. First, he argues that the tax court improperly denied his motion to dismiss. He claims that the IRS admitted lack of jurisdiction and further argues that the IRS violated his right to due process because the IRS did not determine the actual tax deficiency before issuing the notice of deficiency. He also urges that he is a "freeborn and sovereign" person and is, therefore, not subject to the income tax laws. (Blue Brief at 5–13).

The IRS denies that it conceded lack of jurisdiction and responds that Stoecklin's argument that he is not subject to the

---

**3.** The corporate deductions were in the following amounts: $5,563 (1978); $16,450 (1979); $17,612 (1980); $22,475 (1981); $16,754 (1983). Docs. 53, 54.

**4.** The trust's income included gross rental income, interest income, management and contracted fees income, and litigation income. Doc. 6, Ex. A.

income tax laws is frivolous. The IRS also states that it is clear from the notice of deficiency itself that the IRS did determine the deficiency prior to issuing the notice. (Red Brief at 19–22).

Upon sorting out the double negatives in the petition, it is clear the IRS denied Stoecklin was outside its jurisdiction. Record, Docs. 2, 6. Thus, Stoecklin's argument that the IRS admitted lack of jurisdiction is unsupported by the record.

■ The argument that the IRS denied Stoecklin due process because it did not actually determine his tax deficiency before issuing the deficiency notice is equally without merit. A deficiency notice, which is a taxpayers' "ticket to the Tax Court," at a minimum must show that "the IRS has determined that a deficiency exists for a particular year and specify the amount of the deficiency." *Benzvi v. Commissioner,* 787 F.2d 1541, 1542 (11th Cir.1986), *cert. denied,* 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 250 (1986). Here, the notice of deficiency computed and explained the additional taxes. Record, Doc. 6, Ex. A. Thus, the deficiency notice met the minimum requirements of *Benzvi.*

Stoecklin relies upon *Scar v. Commissioner,* 814 F.2d 1363 (9th Cir.1987), which is distinguishable from the instant action. In *Scar,* the Ninth Circuit held invalid a deficiency notice in which the IRS failed to determine the actual deficiency but instead inserted an "amount unrelated to any deficiency for which the Scars were responsible." *Id.* at 1370 n. 11. In addition, the IRS did not have the tax return for the year in question. Thus, the court distinguished cases in which a deficiency had actually been determined.

■ Next, Stoecklin's argument that he is not subject to the income tax laws and that the IRS and the tax court lacked jurisdiction is without merit. In *Biermann v. Commissioner,* 769 F.2d 707, 708 (11th Cir. 1985), *cert. denied,* 479 U.S. 1035, 107 S.Ct. 887, 93 L.Ed.2d 840 (1987), this Court held that arguments that a petitioner was not a person liable for taxes but was a "freeman" and that his wages were not income were patently frivolous. Stoecklin's argu-

ments that he is not subject to the income tax laws are equally frivolous. *See also McNair v. Eggers,* 788 F.2d 1509, 1510 (11th Cir.1986) (imposing sanctions for frivolous appeal).

B.  Whether the tax court properly allowed the IRS to amend its answer before trial to claim in increased deficiency?

■ Stoecklin argues that the tax court erred in allowing the IRS to allege an increased deficiency based on the market value of the silver dollars. He asserts that this claim was barred by the statute of limitations.

Additional taxes ordinarily must be assessed within three years from the filing of the return. 26 U.S.C. § 6501(a). When the taxpayer omits gross income in an amount exceeding 25 percent of the gross income stated in the return, a six-year statute of limitations applies. *Id.* § 6501(e)(1)(A).

Stoecklin's objection is that the statute bars the increased deficiencies for 1978 and 1979. Record, Doc. 36 at 4. However, on his 1978 return, Stoecklin reported gross income of $2,200 while the IRS assessed a deficiency of $6,931 based on the market value of the silver dollars. For 1979, Stoecklin's return reported gross income of $6,814 while the increased deficiency was $5,416. The tax court correctly found that these deficiencies exceeded 25 percent of the reported gross income. Thus, the six-year statute of limitations applies. Record, Doc. 54 at 3, 29–30. The IRS issued a notice of deficiency for tax years 1978 and 1979 on December 12, 1983 within six years after Stoecklin's 1978 and 1979 returns were filed. Record, Doc. 54 at 29–30.

■ Stoecklin argues that he falls within 26 U.S.C. § 6501(e)(1)(A)(ii) which provides that in determining whether more than 25 percent has been omitted from gross income, any amount that is sufficiently disclosed in a return to apprise the IRS of its nature and amount is not taken into account. He urges that by reporting the face value of the silver dollars, he informed the IRS of his income. In his reply to the IRS'

answer, however, he alleges that the IRS did not learn of the silver dollar payments until after the petition was filed. Thus, we hold that he did not sufficiently apprise the IRS of the nature and amount of his income and he, therefore, does not come within the provisions of subsection (ii). Record, Doc. 36 at 3.

 C. Whether the tax court properly found an increased deficiency based on the market value of silver dollars?

■ Stoecklin also argues that the IRS improperly taxed his income based on the market value of the silver dollars. He claims that because the silver dollars have only monetary face value and have not been withdrawn from circulation, taxation on their market value is inappropriate. The IRS responds that Stoecklin's income was taxable based on the fair market value of the property he received in exchange for services (i.e. the silver dollars' fair market value).

In *Cordner v. United States*, 671 F.2d 367, 368 (9th Cir.1982), the court held that gold coins were taxable as income at their fair market value because they were withdrawn from circulation and had numismatic value even though they were also legal tender. Stoecklin attempts to distinguish *Cordner* on the ground that silver dollars, unlike gold coins, have not been withdrawn from circulation. In *Joslin v. United States*, 666 F.2d 1306, 1307 (10th Cir.1981), the court held that the fair market value of silver dollars received in exchange for services must be included in income even though silver dollars are also designated as legal tender. We find the holdings in *Cordner* and *Joslin* persuasive and uphold the tax court's findings that the silver dollars are taxable income based on their fair market value.

 D. Whether the tax court correctly held that Stoecklin could not use a family trust to avoid income taxes?

■ Although noting that "it is not entirely clear that the taxpayer seeks review of that ruling," the IRS argues that the tax court correctly found that the trust income was taxable to Stoecklin.[5] The IRS argues that (1) the trust was a device to divert Stoecklin's earnings; (2) transferring income to a family trust in exchange for the trust's assumption of personal expenses, while retaining control over the trust, does not avoid tax liability; and (3) the income was taxable to Stoecklin because he retained administrative powers over the trust. Stoecklin admits in his reply brief that taxability of the trust income is a new issue the IRS has raised on appeal and urges that the tax court holding was not correct on this issue.

We find the IRS's position on this issue persuasive. The court in *O'Donnell v. Commissioner*, 726 F.2d 679 (11th Cir. 1984) provides insight into family trusts.

> A 'family trust' is a tax protestor's scheme for tax reduction and/or avoidance through multiple income splitting and extensive administrative expenses. Typically, the trust reports all the personal income of the settlor and then deducts all personal living expenses to create a net loss, thereby enabling the trust and/or the settlor to pay little or no income tax. Such schemes have been universally condemned by the court. In the usual 'family trust,' the income flows directly from the settlor's employer to the trust.

*Id.* at 681. [citations and footnote omitted]. Furthermore, the *O'Donnell* court recognized that:

> [t]he rationale underlying the courts' universal rejection of the 'family trust' is the firmly established principle that he who earns income may not avoid taxation through anticipatory arrangements no matter how clever or subtle. Recognizing this principle, courts have repeatedly prevented taxpayers from avoiding payment of income tax through 'family trusts' which receive taxpayer's income directly from the employer.

*Id.* [citations omitted]. For these reasons, we condemn Stoecklin's ill-conceived scheme.

---

**5.** The IRS raises this issue in its brief and  Stoecklin discusses it in his reply brief.

In *Vnuk v. Commissioner*, 621 F.2d 1318, 1320–21 (8th Cir.1980), the court held that where the taxpayer assigns his lifetime earnings to a trust, but retains ultimate control over earning the compensation, the conveyance does not shift the tax burden to the trust. The court also held that because the grantor retained control over the trust, his powers as a trustee did not require consent of an adverse party. Thus, because the grantor had the benefit of the trust corpus and income, the trust income was properly taxable to the grantor under 26 U.S.C. § 671 *et seq. Id.* at 1321.

We hold that the tax court correctly found the trust was a "family trust" and a "grantor trust." There was no adverse trustee because Liebelt did not exercise independent judgment over the trust and Stoecklin. Record, Doc. 61 at 10. Because Stoecklin controlled the trust, the trust could not control his performance as an accountant. Thus, Stoecklin retained total control over his work. The trust income was earned by and properly attributed to Stoecklin.

E. Whether this Court should impose sanctions for a frivolous appeal?

 The IRS requests that we impose sanctions in the amount of $1500 against Stoecklin for bringing a frivolous appeal without remanding for an assessment of costs and attorney's fees. Stoecklin failed to argue against such an award in his reply brief.

Where an appeal is frivolous, we may award damages and costs in a set amount instead of remanding the case to assess costs and attorneys' fees. *King v. United States*, 789 F.2d 883, 884–85 (11th Cir. 1986). We find that the facts and law upon which the IRS bases its claim of deficiencies were almost wholly uncontested. Stoecklin, a certified public accountant for over thirty years, however, has advanced arguments on appeal that are patently frivolous. Accordingly, we grant the IRS's request that cost sanctions be imposed against Stoecklin. 28 U.S.C. § 1912 (1988); Fed.R.App.P. 38.

The IRS has suggested that a lump sum of $1500 is appropriate because it would compensate the government for at least the direct costs of defending the appeal and reduce the additional time and expenditure of making an exact determination of damages and costs. We, however, find that this case is an appropriate one for a higher damage award and double sanctions due to the inordinate time necessary to dispose with Stoecklin's frivolous arguments. We note that the Seventh Circuit has consistently imposed lump sum awards in amounts greater than $1500. *See, e.g., Ruderer v. Fines*, 614 F.2d 1128 (7th Cir.1980) ($2500 damages plus double costs); *Clarion Corp. v. American Home Prod. Corp.*, 494 F.2d 860 (7th Cir.1974) ($2500 damages plus double costs). Thus, we impose sanctions in the amount of $3000. This amount provides for the increased damages the government has incurred due to this appeal, plus a conservative estimate of double costs.

AFFIRMED WITH SANCTIONS.