[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-8159

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/26/99
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 1:97-cv-604-JEC &
1:95-60522-REB

IN RE: JIMMY ROGER MORGAN; JAMIE LYNNE MORGAN,

Debtors.

JIMMY ROGER MORGAN; JAMIE LYNNE MORGAN,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA, by and through the
Internal Revenue Service,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 26, 1999)**

Before COX, CARNES and HULL, Circuit Judges.

PER CURIAM:

Chapter 13 debtors, Jimmy Roger Morgan and Jamie Lynne Morgan, filed a successive bankruptcy petition in January 1995. They now appeal the district court's order denying their objection to the Internal Revenue Service's claim as a priority claim. The district court held that IRS's claim was a priority claim because the three year priority period of 11 U.S.C. § 507(a)(8)(A)(i) was tolled during the pendency of the Morgans' first Chapter 13 case. We vacate and remand.

## I. BACKGROUND

The relevant facts are undisputed. The Morgans first filed for relief under Chapter 13 of the Bankruptcy Code in August 1990. In that case, the Internal Revenue Service ("IRS") filed a proof of claim for income taxes owed by the Morgans for the years 1987, 1988, and 1989 in the amount of $29,207. Shortly after filing their petition, the Morgans filed a repayment plan in accordance with 11 U.S.C. § 1322. The Morgans' Chapter 13 plan proposed to pay in full all claims classified as "priority claims" under 11 U.S.C. § 1322(a)(2), including the IRS claim, and was confirmed in November 1990.

The Morgans, however, failed to make all of the payments required by their Chapter 13 plan. For this reason, the United States trustee moved to dismiss the Morgans' first bankruptcy case. The bankruptcy judge dismissed the Morgans' first case in October 1994. While the Morgans made some payments to the IRS during

2

their first Chapter 13 proceeding, they did not make all of the payments required and the IRS claim was not satisfied prior to the dismissal.

Soon after, in January 1995, the Morgans filed a second Chapter 13 petition. The IRS again filed a proof of claim for income taxes owed by the Morgans for the years 1987, 1988 and 1989. The IRS asserted that this was a "priority claim" pursuant to 11 U.S.C. § 507(a)(8)(A)(i) and due to be paid in full.[1] The Morgans objected, arguing that § 507(a)(8)(A)(i) only grants priority status to claims less than three years old. The Morgans argued that because these tax liabilities were over three years old, they were not entitled to priority status. The bankruptcy judge concluded, however, that the three year priority period allowed for unpaid income taxes should be tolled during the pendency of the Morgans' first bankruptcy proceeding. On this basis, the bankruptcy judge entered an order denying the Morgans' objection to the IRS claim. The district court affirmed the bankruptcy judge's decision. The Morgans appeal.

## II. ISSUE & STANDARD OF REVIEW

The narrow issue that we must address is whether the three year priority period of 11 U.S.C. § 507(a)(8)(A)(i), which governs income tax claims, may be tolled during the pendency of a prior bankruptcy proceeding. This is a question of law

---

[1] Neither party disputes that the IRS tax claims in the Morgans' first Chapter 13 proceeding were entitled to priority status under § 507(a)(8)(A)(i).

3

involving the interpretation and application of the Bankruptcy Code, and our review

is *de novo*. *See In re James Cable Partners, L.P.*, 27 F.3d 534, 536 (11th Cir. 1994).

## III. CONTENTIONS OF THE PARTIES

On appeal, the Morgans contend that their tax liability for 1987, 1988 and 1989

should be discharged in their second Chapter 13 proceeding, because the tax liability

is older than the three years allowed under § 507(a)(8)(A)(i). The Morgans argue that

the plain language of the Bankruptcy Code does not allow for tolling this three year

priority period during the pendency of their first bankruptcy proceeding.

The IRS, on the other hand, contends that an automatic stay during the

Morgans' first bankruptcy proceeding prevented it from collecting the tax liability.

For this reason, the IRS argues, the three year priority period of § 507(a)(8)(A)(i)

should be tolled during the pendency of the Morgans' first Chapter 13 case and the tax

liability should not be discharged.

## IV. DISCUSSION

Priority claims under 11 U.S.C. § 507(a)(8)(A)(i) are due to be paid in full

under a Chapter 13 repayment plan, *see* 11 U.S.C. § 1322(a), and also receive

protection against discharge. *See* 11 U.S.C. § 523(a)(1). Section 507(a)(8)(A)(i)

provides that unpaid income taxes are entitled to "priority status" so long as the tax

returns were due less than three years before the filing date of the bankruptcy

4

petition.[2]  Neither party disputes that the tax liability in question is now more than three years old and normally would be discharged under 11 U.S.C. §1328(a).[3]

In this case, the IRS was prevented from collecting the unpaid income taxes during the pendency of the first bankruptcy proceeding by the provisions of the confirmed plan and the automatic stay imposed by 11 U.S.C. § 362(a)(6).  The IRS contends that in cases like this, the three year priority period should be tolled during the pendency of the first bankruptcy proceeding.

Bankruptcy law aims to serve both the debtor and the creditor.  While the law attempts to give an honest debtor a fresh start, *In re Folendore*, 862 F.2d 1537, 1540 (11th Cir. 1989), Congress also "intended to give the government the benefit of certain time periods to pursue its collection efforts."  *See In re Richards*, 994 F.2d

---

[2]  Section 507 provides in pertinent part:

> (a)    The following expenses and claims have priority in the following order:
> . . . .
> (8)    Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for–
> > (A)    a tax on or measured by income or gross receipts–
> > > (i)    for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

11 U.S.C. § 507(a)(8)(A)(i) (Supp. 1998).

[3]    Income tax liability that qualifies as a priority claim also receives protection against the general pre-petition discharge provision in 11 U.S.C. § 1328(a).  *See* 11 U.S.C. § 523(a)(1) (Supp. 1992) (providing  for exceptions to the discharge of certain tax liability, including tax liabilities that are priority claims under 11 U.S.C. § 507(a)(8)(A)(i)).

763, 765 (10th Cir. 1993). Both parties agree that the plain language of the Bankruptcy Code fails to provide explicitly for tolling the three year priority period in § 507(a)(8)(A)(i).[4] Thus, the question we face is whether the priority period of § 507(a)(8)(A)(i) may be tolled during a prior bankruptcy proceeding in the absence of explicit language in applicable statutes permitting such tolling.

Every circuit that has addressed this issue, except for the Fifth Circuit, has concluded that the three year priority period may be tolled during a prior bankruptcy proceeding. The circuits differ in their reasoning as to why tolling is permitted. A majority of the circuits rely upon an interpretation of 11 U.S.C. § 108(c) to answer this question. Section 108(c) extends the statute of limitations for creditors, "if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor" and the creditor is hampered from proceeding outside the bankruptcy court because of the automatic stay.[5] These courts have concluded that § 108(c), considered in conjunction with 26

---

[4]    In its brief, the IRS states that, "we agree that the literal language of the above provisions [§ 507(a)], including Bankruptcy Code § 108(c) and I.R.C. §§ 6503(b) and (h) do not require suspension of the 3-year priority period . . . ." (Appellee Br. at 43).

[5] Section 108(c) provides:

> (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this

6

U.S.C. § 6503(b) of the Internal Revenue Code (which suspends the limitation period on tax collection against a debtor), tolls the three year priority period. *See In re Waugh*, 109 F.3d 489 (8th Cir.), *cert. denied*, 118 S.Ct. (1997); *In re Taylor*, 81 F.3d 20, 23 (3d Cir. 1996); *In re Montoya*, 965 F.2d 554, 556 (7th Cir. 1992)*; see also In re West*, 5 F.3d 423 (9th Cir. 1993) (suspending the running of § 507(a)(7)(ii)'s 240-day priority period). Both the bankruptcy judge and the district court followed the majority approach and concluded that § 108(c) and § 6503(b) work in conjunction to toll the three year priority period during the pendency of the Morgans' first bankruptcy proceeding.

Other courts have held, however, that the plain language of 11 U.S.C. § 108(c) is insufficient to toll the priority period of § 507(a)(8)(A)(i). *See In re Quenzar*, 19 F.3d 163, 165 (5th Cir. 1993) (concluding that § 108(c) was insufficient to allow for the tolling of the three year period); *see also In re Eysenbach*, 170 Bankr. 57 (Bankr. W.D.N.Y. 1994) ("As a provision of the Bankruptcy Code, section 507 is obviously

---

title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of–
    (1)  the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
    (2)  30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such a claim.

11 U.S.C. § 108(c) (1993).

not subject to the tolling powers of section 108(c).”); *In re Gore*, 182 Bankr. 293 (Bankr. S.D. Ala. 1995). These courts rely on the plain language of 108(c) which states that it only applies to “nonbankruptcy law” and “nonbankruptcy proceedings” and therefore could not apply to the bankruptcy provision, § 507(a)(8)(A)(i). We agree.

Although we conclude that § 108(c) is insufficient to toll the three year priority period, we find support for tolling the priority period in 11 U.S.C. § 105(a).[6] The IRS argued in the bankruptcy court that the court’s equitable powers under 11 U.S.C. § 105(a) were sufficient to toll the three year priority period. The bankruptcy court and the district court found it unnecessary to reach that question, finding instead that tolling the priority period was mandated.

We have long held that “‘[b]ankruptcy courts are indeed courts of equity, and they have the power to adjust claims to avoid injustice or unfairness.’” *In re Empire for Him, Inc.*, 1 F.3d 1156, 1160 (11th Cir. 1993) (quoting *In re Saybrook Mfg. Co.*, 963 F.2d 1490, 1495 (11th Cir. 1992)). Section 105(a) grants the bankruptcy court the power to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions” of the Bankruptcy Code and take “any action or mak[e]

---

[6] *See Bananni Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1561 (11th Cir. 1992) (noting that “this court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court.”)

8

any determination necessary to enforce or implement court orders or rules, or to prevent an abuse of process."[7]  The Tenth Circuit, in *In re Richards*, 994 F.2d at 765, held that 11 U.S.C. § 105(a) is broad enough "to suspend the 240 day assessment period in 11 U.S.C. § 507(a)(7)(A)(ii)."  We find the Tenth Circuit's rationale persuasive, and, like the Ninth Circuit Bankruptcy Appellate Panel, we believe this rationale also applies to the three year priority period set forth in § 507(a)(8)(A)(i). *See, In re Gurney*, 192 B.R. 529, 537 (B.A.P. 9th Cir. 1996).  As a result, we conclude that 11 U.S.C. § 105(a) is broad enough to permit a bankruptcy court, exercising its equitable powers, to toll the three year priority period, where appropriate, during the pendency of a debtor's prior bankruptcy proceeding.

"Interpreting [the Bankruptcy Code] literally would allow a debtor to create an 'impenetrable refuge' by filing a bankruptcy petition, waiting for [§ 507(a)(8)'s] priority periods to expire, and then dismissing the case and refiling shortly thereafter." *In re West*, 5 F.3d 423, 426 (9th Cir. 1993) (citing *In re Florence*, 115 B.R. 109, 111

---

[7] Section 105(a) provides:

> (a)  The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (Supp. 1992).

(S.D. Ohio 1990)). Due to congressional intent, which favors allowing the government sufficient time to collect taxes, and the fear that taxpayers may abuse the bankruptcy process in order to avoid paying taxes, we hold that the equities will generally favor the government in cases such as this. *See In re Waugh*, 109 F.3d at 492 ("Congress realized that '[a]n open-ended dischargeablity policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due.'") (quoting H.R.Rep. No. 95-595, at 190 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6150). There may be factual scenarios, however, in which the equities favor the taxpayer.[8]

In this case, the Morgans agreed to pay in full their tax liability in the first Chapter 13 proceeding, but failed to do so. Furthermore, the IRS was prevented from collecting from the Morgans outside of bankruptcy because of the confirmed plan and the automatic stay.

Since the applicability and use of § 105(a) is a decision that is typically left to the bankruptcy court, we leave the decision to the bankruptcy court in this case. The

---

[8] While the record has not been developed fully, there does not appear to be any evidence of dilatory conduct or bad faith on the part of the Morgans. We do not set forth the equitable considerations regarding § 105(a), but we reject the notion espoused in *In re Gore*, 182 B.R. 293, 316 (Bankr. S.D. Ala. 1995) that a finding of dilatory conduct or bad faith is necessary to find the equities in favor of the government.

Furthermore, we do not address the question of whether there may be a difference between the actual tax liability, penalties or interest for the purpose of considering the equities.

judgment of the district court is vacated and the case is remanded so that the bankruptcy court may in the first instance consider the issue of tolling under § 105(a).

## V. CONCLUSION

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.