**In re Gerald Wayne HICKS, Debtor.**

**No. 97–16513–8B3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 30, 2001.

Gerald Wayne Hicks, Brandon, FL, pro se.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

Attorney General of United States, U.S. Dept. of Justice, c/o John A. Galotto, Trial Attorney, Tax Division, Washington, DC.

### ORDER ON REMAND AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

THOMAS E. BAYNES, Jr., Chief Judge.

THIS CAUSE came on to be considered upon the Order entered by the United States District Court on October 13, 2000, ("Remand Order") remanding the above captioned case for further consideration. *See Hicks v. United States of America, (In re Hicks)*, 257 B.R. 354 (M.D.Fla.

2000). A review of the Remand Order reveals that the record on appeal apparently did not include the transcript of this Court's hearing held February 23, 1999, whereupon this Court made findings of fact and conclusions of law as to the Motion for Summary Judgment on the Debtor's Objection to Claim filed by the United States of America, a/k/a the Internal Revenue Service ("IRS"), and the IRS's Motion to Dismiss Adversary Proceeding.[1] At the February 23rd hearing, the summary judgment motion was granted, the IRS's claim was allowed as filed, and the companion adversary proceeding was dismissed.[2] The following constitutes this Court's Order on Remand, and includes findings of fact and conclusions of law consistent with this Court's oral ruling at the February 23rd hearing in accordance with Federal Rule of Civil Procedure 52(a). *See* Fed.R.Civ.P. 52; Fed. R. Bankr.P. 7052.

### Background

In October 1997, the Debtor filed his eighth bankruptcy case.[3] In March 1998, the Debtor simultaneously filed an adversary proceeding and an Objection to Claim to the only claimant in the case, the IRS.[4] As to the initial Objection to Claim,[5] the Debtor did not state with specificity the basis for his objection, and the Court also determined he had failed to file tax returns for several years. The Objection was overruled without prejudice providing the Debtor filed the federal income tax returns that appeared to be delinquent. This Court by order in each Chapter 13 case requires the Debtor as a condition precedent to confirmation to file its tax returns.[6]

---

1. On February 23, 1999, this Court held a Preliminary Hearing in the general case on the Debtor's Renewed Objection to Claim of Internal Revenue Service (Docket No. 41) and the Motion for Summary Judgment by United States of America (Docket No. 51). The Court simultaneously held a Pretrial and Discovery Conference in the related adversary proceeding, Adv. No. 98–143, including a hearing on the Motion to Dismiss Adversary Proceeding by Defendant United States of America (Docket No. 24, Adv. No. 98–143). A copy of the transcript of the February 23, 1999 hearing can be found in the adversary proceeding. (Docket No. 30, Adv. No. 98–143).

Further references to the transcript shall be cited as "Tr. at p. ——." All references to documents by docket number refer to the general bankruptcy case unless otherwise indicated.

2. Tr. at p. 57–62.

3. The following table details the Debtor's filing history:

| Chapter | Case No. | Filed | Reason dismissed |
|---|---|---|---|
| 13 | 92–04678–8B3 | 04/07/92 | Granted creditor's motion to dismiss with prejudice |
| 13 | 93–01031–8B3 | 02/01/93 | Granted Debtor's motion to dismiss |
| 13 | 93–08215–8B3 | 07/30/93 | Failure to pay filing fee (installments) |
| 13 | 94–06540–8B3 | 07/06/94 | Failure to: file schedules/statement of financial affairs |
| 7 | 94–10336–8B7 | 10/25/94 | Failure to: file schedules/statement of financial affairs/plan; attend § 341 mtg.; pay filing fee-Discharge withheld |
| 13 | 95–12841–8B3 | 12/05/95 | Failure to file schedules/statement of financial affairs/plan |
| 13 | 96–00428–8B3 | 01/12/96 | Failure to file schedules/statement of financial affairs/plan |

4. The Debtor also included the State of Florida and various individuals in the adversary proceeding all of which it appears were not served. *See* Adv. No. 98–143.

5. Objection to Claim, (Docket No. 20 (March 18, 1998) (handwritten document)).

6. *See In re Graffy,* 216 B.R. 888, 889 (Bankr. M.D.Fla.1998); *Cobb v. Hulsey (In re Cobb),* 216 B.R. 676, 678 (Bankr.M.D.Fla.1998); *In re Nygaard,* 213 B.R. 877, 878 (Bankr. M.D.Fla.1997).

The Debtor filed a Motion to Establish Reservation of Rights in that the Debtor alleged he was not required to file his tax returns, but notwithstanding, the Debtor would file the returns for the years 1994, 1995, 1996 and 1997 "ostensibly under protest." Further, that if this Court ruled for him as regards to the Objection, then he would be allowed to withdraw his tax returns.[7] The Debtor in June of 1998 filed his Amended Objection to Claim[8] which was similar to the allegations in the adversary proceeding which, condensed, suggest the State of Florida and the IRS, somewhere around 1935, joined in a compact through the Social Security system which deprived the Debtor of his constitutional rights. Paragraph 19 of the Amended Complaint gives the best thumbnail sketch of the major allegations of the Debtor:

Hicks contends that the application and enforcement of the federal Internal Revenue laws, 26 U.S.C. §§ 1, et seq., by the Internal Revenue Service to himself and his private property, under the provisions of §§ 1, 1401, 3304, 6017, and 7701(a), or Chapter 21 and 23, are unconstitutional and invalid in its application to himself and his private property under the circumstances, because the authority of the Internal Revenue Service to enforce *any* federal Internal Revenue laws against Hicks himself, and his private property, or against Hicks as an artificial entity, exists as an assumed power incorporated in the unconstitutional federal Social Security Act of 1935, as amended, as [that] legislation

was unconstitutionally adopted by the state of Florida in its general and statute laws identified above, and as each has been subsequently amended.[9]

In the second Objection to Claim,[10] the Debtor was more specific as to the issues in the IRS's proof of claim to which he objected, including:

* * The unsecured claims for 1984 and 1985 in the sum of $10,102.98 were uncollectable as they were beyond the ten-year statute of limitations found in 26 U.S.C. § 6502.[11]

* * The penalties shown in the unsecured priority claim of $3,245.24 and the penalties in the unsecured general claim of $3,474.58 were not broken down as to how much of these are applicable to "what" years.[12]

* * The Debtor stated:

[T]hat on or about October 18, 1995, the IRS received monies owed to Hicks in the amount of $8,487.04, from Centex–Great Southwest Corporation, pursuant to a *Notice of Tax Levy,* however Hicks has never received a Notice of Seizure required by 26 U.S.C. § 6335, or credit for this amount against any alleged outstanding IRS debt. The claim of the IRS stated in the proof of claim should be reduced, to reflect such credit due Hicks.[13]

* * The Debtor took the position that the secured claim of the IRS was only

---

7. Motion of Debtor to Establish Reservation of Rights with Regard to the Filing of IRS Form 1040 for Years 1994, 1995, 1996, and 1997, (Docket No. 29 (June 3, 1998)).

8. Hicks Objection to Claim, (Docket No. 30 (June 3, 1998)).

9. Amended Adversary Proceeding, (Docket No. 23, Adv. Pro. 98–143 (Oct. 1, 1998)).

10. Hicks Objection to Claim, (Docket No. 30 (June 3, 1998)).

11. *See id.* at ¶ 2.(a).

12. *See id.* at ¶ 2.(b).

13. *Id.* at ¶ 2.(c). This subject appears to be the gravamen of his objection.

worth $500.00 and, therefore, that should be the value of its secured claim.[14]

Ultimately, the Objection to Claim and the adversary proceeding came on for hearing on February 23, 1999.[15] Prior to that point, the IRS filed its Motion to Dismiss[16] the adversary proceeding and Motion for Summary Judgment[17] as to the Debtor's Objection to Claim. The Court had already cautioned the Debtor at a previous hearing on the IRS's Motion to Dismiss the adversary proceeding that if the Debtor wished to proceed it was important he raise specific tax-related issues. As that was the case in the Objection, it was not with the adversary proceeding. On page 4 of the February 23rd transcript, the Court states, "[t]here was something in the adversary. I didn't remember that. But, Mr. Hicks, you lose on the constitutionality of [the IRS] to tax you." The

Debtor stated, "This is not a question about the constitutionality of whether or whether I can or cannot be taxed, Your Honor. This pleading deals with the Commerce Clause question."[18] The Court went on to point out that several Federal Courts had come up with a non-exhaustive list of issues raised by tax protestors that had no legal merit and were patently frivolous.[19] In response to the Court's initial admonishment, the Debtor asserted he was not making the argument about taxpayer sovereignty, nor that the authority of the United States is confined to the District of Columbia, nor that the tax is a direct tax.[20] He also stated he was not making an argument as to the Sixteenth Amendment, or that the tax law is unconstitutional.[21] The Debtor further noted he was not arguing the issues that wages are not income, or that no statutory authority

14. *See id.* at ¶ 3.

15. As noted above, the Court held a pretrial and discovery conference in the Adversary Proceeding, *see* Fed.R.Civ.P. 26, and a preliminary hearing on the general case matters. *See* Tr. at p. 3.

16. (Docket No. 24, Adv. Pro. 98–143 (Oct. 20, 1998)).

17. (Docket No. 51 (Oct. 27, 1998)).

18. Tr. at p. 4.

19. Tr. at p. 5; *but see,* Hicks' initial Complaint at ¶ 3, (Docket No. 1, Adv. Pro. 98–143 (March 18, 1998)).

The Court here notes federal jurisprudence contains many cases involving individuals who assert novel arguments in protest of paying taxes, such as "... they [are] not taxpayers within the meaning of the tax laws, that wages are not income, that the Sixteenth Amendment does not authorize the imposition of an income tax on individuals, and that the Sixteenth Amendment is unenforceable." *See Cheek v. United States,* 498 U.S. 192, 195, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). *Accord*

*Stoecklin v. Comm'r of Internal Revenue,* 865 F.2d 1221, 1224 (11th Cir.1989) (characterizing similar theories as patently frivolous); *McNair v. Eggers,* 788 F.2d 1509, 1510 (11th Cir.1986) (same); *see also, In re Bertelt,* 250 B.R. 739, 745–46, 748–50 (Bankr.M.D.Fla. 2000) (rejecting similar arguments, including argument that Debtor's income is "foreign" income as Debtor resides in Florida, a state foreign to the United States); *Commonweal, Inc. v. Internal Revenue Service, (In re Commonweal),* 171 B.R. 405, 407–09, 411 (Bankr. M.D.Fla.1994) (piercing the corporate veil of Debtor as nominee of Stoecklin (*supra* this note) as sham to avoid taxes). *See also United States v. Cheek,* 3 F.3d 1057, 1060, 1063–65 (7th Cir.1993), *appeal after new trial following remand in, Cheek v. U.S.,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617, *cert. denied* 510 U.S. 1112, 114 S.Ct. 1055, 127 L.Ed.2d 376 (1994).

The Court also notes, the IRS investigates illegal tax protesters and maintains records regarding the activities of these groups. *See Clarkson v. Internal Revenue Service,* 811 F.2d 1396, 1397 (11th Cir.1987).

20. Tr. at pp. 5–6.

21. Tr. at p. 6.

exists for the income tax.[22] His argument was based on the Commerce Clause and the exercise of Congress to put in place the Social Security program, and that was directly related to § 3304 of the Tax Code (Employment Tax).[23] At this point, the Court advised the Debtor both as to the issue of the Objection to Claim and as to the adversary proceeding that:

... Under the Bankruptcy Code when the Internal Revenue Service files their proof of claim it is deemed to be absolutely correct and [has] efficacy as filed. So the only question is is it not being allowed or allowable under the Tax Code [and Bankruptcy Code].

MR. HICKS: It's certainly allowable under the Tax Code, Your Honor, however, because of Title 26, Section 3304 there is an argument for my inclusion as an individual engaged in employment when, in fact, I'm not.

THE COURT: It doesn't make any difference. You filed the tax returns. That's it.

MR. HICKS: I was compelled to file those returns.[24]

THE COURT: It is not compelled. You did not have to file those returns.

MR. HICKS: If I don't file the returns, I am treated as if I am a taxpayer. If I make the argument—

THE COURT: You are a taxpayer.

MR. HICKS: I'm sorry. Tax protestor.

THE COURT: Sir, I don't care if you are a tax protestor or not. You can protest the taxes till the cows come home.

MR. HICKS: Your Honor, I'm not a tax protestor. I'm not coming from any those questions.

. . .

MR. HICKS: Section 3304 is directly related to the reason that I am compelled to file a return in the first instance.

THE COURT: Doesn't make any difference.

MR. HICKS: Your Honor—

THE COURT: When you filed the tax returns, you are it. If you don't want to file the tax returns, then you get kicked out of bankruptcy anyway because you have to file the tax returns in bankruptcy. So once you file the tax returns, you are here. And besides, Mr. Hicks, you have had since 1992 to resolve all these questions, and you keep filing bankruptcies and getting out of them.

MR. HICKS: That's not true, Your Honor. None of the other related bankruptcies had anything to do with this argument.

THE COURT: I know that, but you have taxes going back to 1984. You never stayed around in bankruptcy long enough to resolve your problems. What I am saying is is that, sorry.[25]

The Court then found there was no constitutional question and Title 26 and the Bankruptcy Code were both constitutional.[26] Further, the Court found there was personal jurisdiction over the Debtor.[27] Whereupon, the Debtor said, "Not person-

---

22. Tr. at pp. 6–7.

23. Tr. at pp. 7–8; 26 U.S.C. § 3304.

24. For a discussion on requirements to file tax returns in Chapter 13 cases, *see Fleming v. Baynes, (In re Fleming)*, 228 B.R. 780, 783 (Bankr.M.D.Fla.1998).

25. Tr. at pp. 8–11.

26. Tr. at p. 11.

27. Tr. at p. 11.

al jurisdiction in terms of this Court having jurisdiction over me; personal jurisdiction with regard to the Tax Code and its application to me through Section 3304." [28] Upon which, the Court determined the Debtor was subject to the Tax Code.[29] The colloquy that proceeded further from page 16 to page 36 of the transcript of the February 23rd hearing dealt with the Debtor's concept of constitutional law and the unconstitutionality of various known and unknown aspects of the federal government operation.

On page 37 of the transcript, the Court found as to the ramification of motions for summary judgment as found in the standards set forth by the United States Supreme Court. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding the standard of proof in summary judgment rulings is the same as it would be at trial); *Celotex v. Catrett*, 477 U.S. 317, 323–35, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (discussing the appropriate burdens of proof and types of evidence to use in summary judgment decisions); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (detailing the elements of summary judgment analysis). Specifically, the Court requires the proponent of the motion for summary judgment must establish a prima facie case. "And any issues that you raised in the objection are defeated by the motion for summary judgment." [30] Not only was there no genuine issue of material fact, the law did not support the Objection to Claim.

The IRS's Motion for Summary Judgment is accompanied by a Memorandum of Law and a filed Certification of an Official Record.[31] Other than the Objection to Claim,[32] and the second [33] and Renewed [34] Objections to Claim, the Debtor filed no affidavits or other documentation in opposition to the IRS's Motion for Summary Judgment, except the Debtor did file a copy of a letter dated October 24, 1995 which dealt with a notice of tax levy against proceeds sought by the IRS from one of Debtor's employment projects.[35] The letter is from the attorney for the general contractor of the Debtor discussing the contractor's transmission of a check to the Internal Revenue Service. There is also a copy of the Notice of Voluntary Dismissal by the general contractor against the IRS, and a copy of the check to the IRS in the amount of $8,487.04.[36] At the time the Motion for Summary Judgment was heard, the IRS met their burden of proving their prima facie case as to the issue of the statute of limitations as to the 1984 and 1985 tax claim, and the issue regarding the credit allegedly due to the Debtor from the monies received by the IRS from the general contractor in 1995.[37]

28. Tr. at p. 12.

29. Tr. at pp. 13–15.

30. Tr. at p. 37.

31. (Docket No. 51 (Oct. 27, 1998)).

32. (Docket No. 20 (March 18, 1998)).

33. Hicks Objection to Claim, (Docket No. 30 (June 3, 1998)).

34. Debtors' [sic] Renewed Objection to Claim of Internal Revenue Service, (Docket No. 41 (August 13, 1998)).

35. *See* attachments to Hicks Objection to Claim, (Docket No. 30).

36. *See id.*

37. The issue raised by the Debtor as to the penalties, and to which years they apply, was not pursued by the Debtor, and there was no evidence offered to support his allegations. Neither was there any evidence associated

As to the issue of the statute of limitations, the IRS's motion was granted. The Court also notes the Debtor has had an opportunity to raise these issues as to the taxes from the 1980's in his prior seven bankruptcies. Those prior bankruptcies have tolled the running of the statute of limitations.[38] Therefore, the tax claim as regards to those taxes should be allowed as filed, as also the Motion for Summary Judgment should be granted.

The final issue argued by the Debtor is the IRS had not given the appropriate credit on the tax claim for the levy made on the Debtor's general contractor. The Debtor took the position the non-credit was supported by the copy of an October 24, 1995 letter attached to his second Objection to Claim.[39] The IRS took the position, however, that the levy amount had actually been credited to the Debtor's partner.[40]

with the value of the secured claim of the IRS, however, the Debtor filed a Motion to Value, (Docket No. 32 (June 9, 1998)), but did not properly serve it, and it was denied.

**38.** The Court finds 26 U.S.C. 6503(h) clearly tolls the 10 year statute of limitations on collection of a tax found in 26 U.S.C. 6502 during the period of time that a bankruptcy case is pending, plus an additional six months from the date of the assessment. This ruling is supported by the plain language of the statute. *See In re Klingshirn,* 147 F.3d 526, 528 (6th Cir.1998).

Further, the Eleventh Circuit holds a Bankruptcy Court's equitable powers under 11 U.S.C. § 105(a) enable the Court to toll the time period for determining whether taxes are priority taxes under in 11 U.S.C. § 507(a)(8)(A) during the period of time the Debtor's in bankruptcy. *See Morgan v. United States of America (In re Morgan),* 182 F.3d 775, 779–80 (11th Cir.1999). Thus, this Court has the ability to toll the time periods for collection of tax during the pendency of bankruptcy proceedings even absent a specific statute requiring the toll. As the equities favor the government in these situations, and the Debtor in this case engaged in serial filings and dilatory practices, this Court finds it appropriate to toll the time period under its § 105 powers. *See id.* at 780.

**39.** *See* attachments to Hicks Objection to Claim, (Docket No. 30).

**40.** Tr. at pp. 39–40. The Court takes the position that the partner, Carol A. Titze a/k/a Titze/A–1 Painting Systems is at least a partner to the Debtor in a business context. From the records filed in this case and the other bankruptcies of Mr. Hicks and Ms.

Titze, they live at the same address. Ms. Titze has filed six bankruptcies, receiving a discharge in a Chapter 7 in 1990, and then filing two cases in 1991, a case in 1992, and cases in 1995 and 1996, all of which were dismissed, the latter two for not complying with various Court rules for filing schedules, paying fees, and appearing at 341 meetings. The IRS filed a Proof of Claim in Ms. Titze's 1996 case in the amount of $335,421.33.

Both the Debtor and Ms. Titze claim to be single individuals in their most recent bankruptcy schedules. *See* Schedule I, (Docket No. 5 (Oct. 22, 1997)) (filed in the instant case); Schedule I, *Titze,* Case No. 96–427–8B3 (Docket No. 6 (Feb. 6, 1996)). However, the two were married at some point according to pleadings in both the Debtor's and Ms. Titze's prior filings. Ms. Titze twice sued mortgage companies regarding a prior mortgage on a home shared by she and the Debtor in which she included documents she signed as Carol Hicks. *See Titze v. ICM Mortgage, et al. (In re Titze),* Ch. 13 Case No. 91–13681–8B3, Adv. No. 91–754, Amended Complaint at Law, attachments thereto (Docket No. 3 (Nov. 21, 1991)) (attaching Note and Mortgage dated Dec. 31, 1982 for Titze's home at 5318 Northdale Boulevard, Tampa, Florida, which she signed as Carol Hicks); *Titze v. ICM Mortgage, et al. (In re Titze),* Ch. 13 Case No. 91–4900–8B3, Adv. No. 91–426, Complaint at Law, attachments thereto (Docket No. 1 (July 8, 1991)) (same).

In the Debtor's prior Chapter 7 bankruptcy case, Case No. 94–10336–8B7, there is also a suggestion of marriage. Prior to that case, the Court granted relief from the automatic stay to the holder of the mortgage, and found future Chapter 13 filings would be in bad faith based on evidence the Debtor and Ms. Titze engaged in serial individual filings to

It is quite clear the levy by the IRS was in January of 1995. The initial levy was on Centex–Great Southwest Corporation seeking to collect for the 1987 and 1988 taxes owed by Carol A. Titze. Centex–Great Southwest Corporation, the general contractor, filed an interpleader action dealing with both Titze and the Debtor. It was later dismissed, and Centex–Great Southwest Corporation did transmit the funds to the Internal Revenue Service, and the amount was credited, according to the IRS, to Ms. Titze's account.[41]

The Debtor's argument in his second Objection to Claim [42] states he never received a notice of seizure as regards the notice of tax levy pursuant to 26 U.S.C. § 6335(a). Yet on page 40 of the transcript of the February 23rd hearing, he states:

First there was a levy on M[s]. Titze. I filed my action as a third party. They come back and, boom, levy on me. There were two levies out there; not just hers. And when the complaint was dismissed, it was dismissed on the basis of my levy, and I was never credited the money.[43]

█ It would appear the question of non-notice is not supported. Further, it would appear the Internal Revenue Code provides that a third party who claims some interest in seized property must commence an action in District Court within a period of nine months from the date of the levy. *See* 26 U.S.C. §§ 7426(a)(1) &

6532(c). On page 38 of the transcript, it is apparent the Debtor did object to the levy in the District Court, and the case was ultimately dismissed.

It is a valid conclusion by this Court from the transcript of the February 23rd hearing that the Debtor had more information than he originally portrayed in his Objection, and raised anew the issue of credit to Ms. Titze, of which he had previous knowledge. The levy was in June 1995, and he had ample opportunity to raise these issues in his 1996 bankruptcy case which he filed in January of that year. Thus, it would appear the Debtor had the opportunity to object to the levy in the District Court action which was dismissed, and the 1996 bankruptcy, which was dismissed for failure to comply with general bankruptcy requirements such as filing schedules and attending a § 341 meeting of creditors. And in this case, by acknowledging his awareness of the original levy on Ms. Titze and his objection to the same as a third party in the District Court action, the Debtor has placed himself in the position where, as a matter of law, his time has run to object to the levy.

## CONCLUSIONS OF LAW

Both the issues in the adversary proceeding and as to the Objection to Claim are core. As to the issues raised in the adversary proceeding, there is no legal basis upon which the Debtor can challenge the constitutionality of the tax law, much

thwart foreclosure efforts on the 5318 Northdale Boulevard home. *See* Order Granting Motion for Modification of Automatic Stay, (Docket No. 13, Case No. 93–8215–8B3 (Sept. 27, 1993)). In the subsequent Chapter 7, the mortgage holder attached copies of the same documents, as well as a copy of a deed and a copy of a foreclosure judgment also naming Ms. Titze as Carol Hicks, wife of Gerald W. Hicks. *See* Motion to Modify Automatic Stay and Request for Hearing, at Exh.'s A & B

(Docket No. 6, Case No. 94–10336–8B7 (Nov. 8, 1994)).

**41.** *See* Motion for Summary Judgment at p. 9, (Docket No. 51 (Oct. 17, 1998)); Tr. at pp. 37–43.

**42.** Hicks Objection to Claim, (Docket No. 30 (June 3, 1998)).

**43.** Tr. at p. 40.

less under 26 U.S.C. § 3304, or the Commerce Clause of the Constitution.[44] Similarly, there is no basis for objecting to the claim of the IRS under such constitutional grounds.[45] As to the specific objections of the Debtor to the claims of the IRS, there are no genuine issues of material fact. The Debtor has neither met the burden under his Objection to Claim, nor as to the IRS's position in its Motion for Summary Judgment.

As to the issue of the 1984 and 1985 taxes, the objection is overruled as the statute of limitations under 26 U.S.C. § 6502 remains open. The previous bankruptcies of the Debtor have tolled the running of the time limit under the statute. As to the objections to penalties and value of the secured claim, the Debtor has established no basis or evidence in this record why his objection should be sustained.

■ As to the objection to any credit from the 1995 levy, again the time has run to make such claims.[46] Further, the Debtor has presented no evidence, other than the copy of the October 24, 1995 letter, which cannot be used to support the objection, nor used to create an issue of fact.[47] Thus, the Debtor again has not met the burden to overcome the IRS's prima facie case.

■ Lastly, it is quite clear the Supreme Court, in the *Celotex, Anderson, Matsushita* decisions, provides a clear and precise methodology for adjudicating motions for summary judgment. The IRS had the burden of establishing its prima facie case as to the Debtor's objections. There is ample valid, supportive and admissible evidence to meet their burden. The burden then shifted to the Debtor who provided no evidence, other than the copy of a letter, which is hearsay.[48] But even supportive, as a matter of law, there was no evidence the various statutes which limited the time by which the Debtor could challenge the IRS's claim had not run, or that there exists a genuine issue of material fact. For these reasons, the Objection to Claim is overruled and the IRS Claim is allowed as filed.

As to the prior dismissal of Adversary Proceeding No. 98–143, the Court finds no reference to this decision in the Remand Order. It appears from the Remand Order that only the rulings in the general case were at issue on appeal. This is further supported by the absence in the Debtor's Complaint of any reference to the argument addressed in the Remand Order—namely the levy issue.[49] The Debtor

**44.** *See Stoecklin*, 865 F.2d at 1224; *McNair v. Eggers*, 788 F.2d at 1510.

**45.** *See id.*

**46.** 26 U.S.C. § 7426(a)(1).

**47.** *See Macuba v. Deboer*, 193 F.3d 1316, 1322–25 (11th Cir.1999) (reiterating general rule that summary judgment motions cannot be supported by inadmissible hearsay); *see generally* 11 **Moore's Fed. Practice**, §§ 56.13–.14 (Matthew Bender 3d ed.) (discussing burdens of parties and evidentiary requirements of summary judgment).

**48.** *See Catrett*, 106 S.Ct. at 2553 (stating "[r]ule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves...."); *Deboer*, 193 F.3d at 1322–25 (stating "[t]he general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'") (citations omitted) quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990) (explaining in detail the scope of this rule).

**49.** It is this Court's position that the rulings in the Adversary were not appealed, but even if this were not the case, the ruling entered today would require the same result. Thus, the Court's granting of the IRS's Motion to Dismiss and the Final Judgment would still stand.

did not include the levy argument, or the tolling issue, in the adversary proceeding pleadings. Thus, the Court's Order granting the IRS's Motion to Dismiss Adversary Proceeding No. 98–143 stands as originally entered,[50] as does the Court's Final Judgment.[51] Accordingly it is

ORDERED, ADJUDGED AND DE-CREED the Objection to Claim filed by the Debtor is overruled and the IRS's Claim is allowed as filed. It is further

ORDERED, ADJUDGED AND DE-CREED the Adversary Proceeding No. 98–143 shall remain dismissed.

---

**50.** (Docket No. 28 (Mar. 5, 1999)).

**51.** (Docket No. 29 (May 11, 1999)).