52 F.3d 328
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Johnnie PRICE, Jr., Plaintiff-Appellant,
v.
Shirley Sears CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 92-2852.
 United States Court of Appeals, Seventh Circuit.
 Argued March 1, 1995.
Decided April 24, 1995.
 
 Before CUMMINGS, EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Johnnie Price worked as a can stacker (technically a "production mechanic") between 1952 and 1979, when his employer closed its Indianapolis plant. Price did not obtain other employment, and his insured status under the Social Security Act expired at the end of March 1985. He filed a claim for disability benefits in 1987 and two claims in 1988. All three were decided adversely to him. Inexplicably, the administrative law judge who heard the third claim did not invoke administrative res judicata but instead decided the claim on the merits. By this quirk we have jurisdiction to hear Price's objection to the third decision. See Califano v. Sanders, 430 U.S. 99, 107-09 (1977). Like the district court, however, we conclude that the administrative decision is supported by substantial evidence.
 
 
 2
 Because Price filed his claim for benefits after his insured status lapsed, the ALJ had to reconstruct his ability to work as of an earlier date. Price has a third-grade education, is obese, is afflicted with diabetes, and has an IQ of approximately 66. These conditions did not prevent him from satisfactorily performing his job through 1979. The ALJ concluded that he could perform that job today, if it were available--and as the disability program is not an unemployment-insurance program, that decision led to a denial of benefits. The ALJ also concluded that Price did not meet the listing in 20 C.F.R. Part 404 Subpart P Appendix 1 Sec. 12.05(C), which treats as disabled any person whose IQ is between 60 and 70 and who have an additional "impairment imposing additional and significant work related limitations of function." Once again, the ALJ thought, Price did not suffer from a significant impairment of his functional ability in March 1985; the ALJ doubted that Price suffered from any impairment at all.
 
 
 3
 In 1982 Price suffered a heart attack. Medical records from 1982 show no coronary artery disease. His last hospital visit after the heart attack occurred in April 1982; hospital records show that Price had no complaints and appeared to have recovered nicely. The ALJ concluded that Price had "very little functional limitation ... by March 31, 1985." Price received no medical treatment between April 1982 and an accident in May 1986, when he was journeying to the Kentucky Derby by motorcycle. Price arrived at the hospital with multiple rib fractures but no other major medical impairment. Various tests revealed cardiac function within normal range. Other tests picked up Price's diabetes but physicians concluded that none of his organs had been damaged by that disease. The tests in spring 1986, closest in time to the last insured date, support the ALJ's conclusion that as of March 1985 Price could have performed his former job as a can stacker. Price testified otherwise, but the ALJ made a specific finding that his testimony was not credible. The very fact that Price chose to travel to the Kentucky Derby by motorcycle in May 1986 implies that he had recovered from his heart attack by March 1985. Roland Rust, an internist, testified at the hearing that a review of Price's medical records confirmed that conclusion. We think that the testimony of a physician, plus the inferences to be drawn from medical records and Price's activities in 1986, supply substantial evidence that Price was not disabled as of March 31, 1985. See Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 4
 Medical documents in the record imply that his condition has deteriorated since 1986. When admitted to the hospital in May 1986 Price weighed 220 pounds; at the time of the hearing in 1989 Price weighed more than 270 pounds. He had low back pain (traced to the motorcycle accident), numbness of the limbs, and shortness of breath. Diabetes often causes complications ending in disability, particularly in the obese. But the ALJ was not compelled to conclude that Price's condition in March 1985 mirrors his condition at the time of the hearing. A medical report in 1989 observed that Price "does not follow a careful regimen for control of this [diabetes] problem." So we may infer that things had been getting worse--but how fast? The ALJ knew Price's condition in late 1989 but had to infer his condition four and a half years earlier. Projecting things backward, like other inferential processes, calls for the application of informed judgment. Under the Social Security Act that judgment belongs to the Secretary rather than to the reviewing court. Stuckey v. Sullivan, 881 F.2d 506, 508 (7th Cir.1989); Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986). The lack of medical care between 1982 and 1986, and the decision to take a long journey by motorcycle in 1986, support the inference the ALJ drew. See Walker v. Bowen, 834 F.2d 635, 644 (7th Cir.1987).
 
 
 5
 We recognize that physicians other than Dr. Rust believed that by March 1985 Price's lifting ability had deteriorated so that he could no longer do work classified as "heavy". Such an impairment, coupled with his low IQ, would lead to a finding of disability. None of these physicians had examined Price before the expiration of his insured status, however. An ALJ is not supposed to count noses and award victory to the side with the most witnesses; instead the ALJ should consider the reasoning behind the medical reports. Sahara Coal Co. v. Fitts, 39 F.3d 781 (7th Cir.1994). The report on which Price places the most reliance was written by Dr. Paul McHenry in August 1989 and was submitted after the evidentiary hearing; it crossed in the mail with the ALJ's opinion denying the claim for benefits. That Dr. McHenry is a cardiologist and Dr. Rust an internist did not compel the ALJ to accept Dr. McHenry's conclusion; indeed, the ALJ could have rejected it because of its late submission. Instead the ALJ evaluated it on the merits, denying the motion to reopen on November 20, 1989, with the explanation that Dr. McHenry's report is more concerned with Price's current condition than with his abilities in March 1985. The report does not reach a conclusion about Price's functional capacity in March 1985. Dr. McHenry's assessment does not depend on tests (at least it does not mention any) but principally relies on Price's description of his own symptoms and abilities--a description that the ALJ rejected as not credible. That his status was deteriorating is clear, and Price may well have been unable to recall and relate the varying abilities he possessed at different times. Reliance on Price's self-reporting afflicts the other medical documents to which he points. The ALJ came to a reasoned evaluation of conflicting evidence, and the substantial evidence standard requires no more. See Anderson v. Sullivan, 925 F.2d 220, 222-23 (7th Cir.1991).
 
 
 6
 AFFIRMED.