**In re John G. COBB and Gloria E. Cobb, Debtors.**

**John G. COBB and Gloria E. Cobb, Plaintiffs,**

v.

**P.A. HULSEY, Charles R. Wilson, Phillip Doyle, and Internal Revenue Service, Defendants.**

Bankruptcy No. 97–4009–8B3.

Adversary No. 97–920.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 23, 1998.

John G. & Gloria E. Cobb, St. Petersburg, FL, Pro Se.

Terry E. Smith, Bradenton, FL, for Trustee.

Mary Apostolakos Hervey, Tax Div., U.S. Dept. of Justice, Washington, DC, for Defendants.

**ORDER (1) ON DEFENDANTS' MOTION TO SUBSTITUTE UNITED STATES AS PROPER PARTY DEFENDANT AND TO DISMISS; (2) ON PLAINTIFFS' MOTION TO DENY DEFEDANTS [sic] "MOTION TO SUBSTITUTE AND DISMISS" AND MOTION FOR SUMMARY JUDGEMENT [sic]; AND (3) DISMISSING CHAPTER 13 CASE**

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE originated in the above-captioned adversary proceeding, and techni-

cally, two motions are before this Court (1) Defendants' Motion to Substitute United States as Proper Party Defendant and to Dismiss and (2) Plaintiffs/Debtors', John G. Cobb and Gloria E. Cobb's, Motion to Deny Defendants [sic] "Motion to Substitute and Dismiss" and Motion for Summary Judgement [sic]. However, since the Court's conclusions on those motions has a direct effect on the viability of the general bankruptcy case, this Court on its own motion also considers dismissal of the Chapter 13 case itself. The bankruptcy case arose from a tax dispute between the Cobbs and the Internal Revenue Service, and developed into a blanket refusal by the Cobbs, despite repeated orders of this Court, to file tax returns as a prerequisite to confirmation of their Chapter 13 case. Most of the pleadings in both the main case and the adversary proceeding are devoted to that underlying theme and are addressed as follows:

## I. FACTUAL AND PROCEDURAL HISTORY

The Debtors filed their voluntary Chapter 7 petition pro se on March 17, 1997. A Section 341 meeting was held on April 15, 1997. Although the Debtors' Summary of Schedules reflected the existence of one creditor holding a secured claim, two creditors holding unsecured priority claims, and two holding unsecured non-priority claims, Schedules D and E reflected no secured or unsecured priority creditors. Schedule F listed four unsecured creditors: the IRS in the total amount of $20,662.04, and three individuals with obligations totalling $8,225.00. Schedule F did not indicate any of the obligations were disputed. No creditors appeared at the Section 341 meeting and only the IRS filed a proof of claim in the case.

Following the Section 341 meeting, the Debtors moved to convert their case to Chapter 13 "to allow for an opportunity to Amend Petition with 'add on' of additional Creditors and a Good Faith effort to resolve our financial problems by our presentment of a pay-back plan ..." The Court granted the Motion on April 29, 1997. It is noteworthy that the Chapter 7 Trustee had filed a response to the Debtors' Motion to Convert

indicating the Debtors' scheduled unsecured priority claims of the IRS might be an indeterminate amount due to their failure to timely file tax returns. At about that same time, the Chapter 7 Trustee requested quantum meruit compensation and the Court approved the Application. The Debtors' filed a Motion to Vacate the award of compensation. This Court denied that motion, specifically stating:

> It appears from the record and the Chapter 7 Trustee's Response to the Debtors' conversion to Chapter 13 that the Debtors documents reflected sufficient income to allow the U.S. Trustee to bring an action under 11 U.S.C. § 707(b) to dismiss the Chapter 7 case. Further it appears the Chapter 7 Trustee requested the Debtors provide other documentation related to potential other assets which could be subject to administration by the Trustee. It is quite clear to this Court the Debtors converted this case to one under Chapter 13 because of the official acts of the Chapter 7 Trustee in administering the Chapter 7 estate.

The Debtors' filed their Chapter 13 Plan on May 7, 1997, listing the Internal Revenue Service (IRS) as an unsecured creditor to whom their obligation was "disputed—contested."

The Debtors expanded on that description in Exhibit A to their Plan, demanding the IRS prove their indebtedness within 90 days from the date of the original Section 341 meeting. The Debtors demands in Exhibit A included the following:

> Proof of indebtedness must be on an approved bankruptcy form, and not on an IRS form. Since the Internal Revenue Service demands preferred status, *we demand an adversary hearing* to be set up in no less than two (2) weeks after the Internal Revenue Service provides its *alleged* indebtedness to this court. Proof of indebtedness must also include **full responses** to the "FIRST SET OF INTERROGATORIES and FIRST SET OF REQUEST [sic] FOR DOCUMENTS...."

(emphasis in original).[1]

As to their remaining creditors, the Cobbs proposed to pay the sum of $20.00 per month under their Plan.

On May 13, 1997, this Court entered its standard Pre–Confirmation Order to Pay the Trustee and Concerning the Filing of Tax Returns, Motions to Value Collateral and/or Void Liens and Objections to Claims. (Pre–Confirmation Order). With regard to the filing of tax returns, the Court required the following:

> [T]he Debtors shall, within thirty (30) days from the date of this Order file all required Federal and State tax returns.... It shall be a condition for confirmation of the Debtors' Plan that the appropriate State and Federal tax returns ... be timely filed in compliance with this Order.... It is important that the Debtors and their counsel comply with the requirements of this Order, since the failure to comply may result in the dismissal or conversion of this case at the duly scheduled confirmation hearing.

The Debtors' Chapter 13 Section 341 meeting was concluded on June 2, 1997, and June 17th, the Chapter 13 Trustee filed his Praecipe for Confirmation with Unfavorable Recommendation, noting the Debtors were not applying all of their disposable monthly income ($640.00) to the Plan payments and that feasibility was questionable due to Debtors' failure to file tax returns for the previous five years. *E.g., In re Nygaard,* 213 B.R. 877 (Bankr.M.D.Fla.1997).

The Debtors filed a "Response to Pre–Confirmation Order Dated May 13, 1997 and Request of Chapter 13 Trustee." In that document, the Debtors not only challenged the authority of the Trustee to object to confirmation but, more importantly, their obligation to file tax returns, stating:

As to your request I have not filed tax returns for 1995 and 1996 because I have not received any response from the IRS to indicate that I have any tax LIABILITY and after researching the law, listening to CPA's [sic], Enrolled Agents and Attorneys, I firmly believe that neither I nor Gloria, have any requirements to file a form 1040.

Both the United States Congress and the Internal Revenue Service, by deceptive and misleading words and statements in the [IRS] publications and [IRS] generated news articles *have committed constructive fraud* by misleading and deceiving us, as well as the general public, into believing that we were required to file [IRS] forms, and also to keep records, supply information, and to pay income taxes. (emphasis in original).

May I [sic] request that you not threaten people with "objection to confirmation" based on the childlike threats you have made to us. We are American Christians, even if you deny that fact. We are suffering, as is all of America, by allowing people who are anti-christian to threaten, coerce, or use their titles of mere public-servants, such as yourself, to coerce an American Christian into acts which are not required by law.

The Debtors also filed a "Response to Chapter 13 Trustee's Praecipe for Confirmation Hearing Coupled with Unfavorable Recommendation" in which they raised similar arguments.[2]

Next, the Debtors filed an Objection to the Claim of the IRS and an Affidavit in Support thereof in which they took umbrage with the contention that the United States Code includes any requirement for paying income taxes. Following a brief Response by the IRS, this Court overruled the Debtors' Objection to the IRS's Claim as premature in

---

**1.** As a practical matter, it should be noted that no adversary proceeding or contested matter was pending at that time and, therefore, the Debtors' discovery requests were in derogation of Fed. R.Civ.P. 26(a).

**2.** Among other contentions, the Cobbs asserted: "With no law in evidence the conduct of the Federal Government employees is not motivated by duty under the law but by Federal Government employee deceit. The whole procedure is a hoax upon the general public.... By this response, we now make known the felonious conduct of Federal Government employees by enforcing illegal collections by the IRS.... You have been apprised of this action. We would call your attention to 18 U.S.C. § 4 (Misprison of Felony)."

that Debtors had not yet filed their tax returns as required by previous order. Undaunted, the following day the Debtors filed a Motion to Dismiss the IRS's Proof of Claim, essentially reiterating the same arguments made in their Objection and Affidavit and, seeking the following relief:

"May the God of creation intervene in the hearts of men that truth may prevail over deception, that law may prevail over lawlessness. May God move the heart of the Judge of this Court to immediately issue and order to dismiss this fraudulent IRS debt. May God cause us to see truth, to acknowledge truth and to act on the truth. This we pray in the Name of our Savior, Jesus Christ. Amen." [3]

Within a week thereafter, the Debtors filed an adversary proceeding, No. 97–920, seeking (1) the IRS's proof of claim be dismissed on the basis of fraud; (2) all Notices of Federal Tax Lien be dismissed as fraudulent; (3) their Objection to the IRS's claim be reinstated; (4) they receive a full discharge of all IRS obligations; (5) the IRS be enjoined from any further actions against them; and (6) they be awarded the sum of $500,000 as punitive damages. The same day, the Debtors filed a Motion to Reinstate "Objection to Proof of Claim" and Request for Hearing in the main case. That Motion and the Debtors' earlier Motion to Dismiss the IRS's Proof of Claim were denied shortly thereafter.

## II. LEGAL ANALYSIS

■ One might lodge any number of arguments to support dismissal of this case. First, the Debtors' repeated refusal to obey orders of the court requiring tax returns be filed warrants dismissal under 11 U.S.C. § 1307(c). *In re Whitehead*, 1997 WL 732503 (M.D.Fla.1997); *In re Vines*, 200 B.R.

940 (M.D.Fla.1996); *In re Nygaard*, 213 B.R. 877 (Bankr.M.D.Fla.1997); *see also*, *In re Greatwood*, 194 B.R. 637 (9th Cir. BAP 1996) (affirming bankruptcy court's dismissal of tax protestor's case on basis that use of bankruptcy court as alternative forum to resolve tax dispute was improper use of the Code); *In re Vomhof*, 207 B.R. 191 (D.Minn.1997) (dismissal of tax objector's bankruptcy case was proper pursuant to § 1307(c)(1) for failure to supply crucial information required by a court).

■ Second, the IRS's proof of claim is prima facie evidence of the validity and amount of the Debtors' obligation. 11 U.S.C. § 502; F.R.B.P. 3001(1). The Debtors' creative efforts to defeat or undermine the claim are quixotic since the only evidence which could rebut the IRS's proof of claim would stem from filed tax returns. *E.g.*, *In re Busch*, 213 B.R. 390 (Bankr.M.D.Fla.1997) (debtors failed to overcome IRS's prima facie showing in proof of claim since they could not show they were not indebted to IRS or IRS was not authorized to assess an income tax against them); *Abbate v. U.S.*, 187 B.R. 9, 11–12 (D.Nev.1995) (debtor's arguments that Internal Revenue Code is unconstitutional and his rights were violated because as a "Sovereign State Citizen" he is not subject to the Internal Revenue Code were insufficient as a matter of law to rebut the prima facie validity of the IRS's proof of claim); *In re Bertelt*, 184 B.R. 603 (Bankr.M.D.Fla.1995) (debtor's objection to IRS's claim on ambiguity grounds insufficient to overcome claim's validity).

■ Yet a third argument underscores the Debtors' lack of good faith in filing the case and seeking confirmation of a Chapter 13 plan essentially to defeat the claim of the IRS and avoid filing federal tax returns. 11

---

**3.** Numerous other "pleadings" were filed by the Cobbs, some of which were stricken or denied as duplicative or not cognizable under the Federal Rules of Civil and Bankruptcy Procedure. In addition to challenging the authority of the IRS, the Department of Justice and this Court to require tax returns be filed, the Cobbs also raised the issue of bias based on the purported antithetical religious beliefs of this Court. For example, in an uncaptioned pleading referencing their Second Request for Rehearing, the Cobbs stated:

"It seems as if the Hebrew/Commercial Law Judge in this case has misunderstood our intentions.... If you cannot provide the actual LAW that would require payment and do not change your opinion ... we will deem it an admission of your bias and anti-Christian prejudice against American Christians...." (emphasis in original). To the extent such statements were deemed scandalous, they were stricken. Moreover, to the extent those statements sought recusal, such relief was denied.

U.S.C. §§ 1307(c) and 1325(a)(3); *e.g., In re Kitchens,* 702 F.2d 885 (11th Cir.1983). The failure to file a Chapter 13 case in good faith or propose a feasible plan because of failure or refusal to file tax returns appears to offer a basis for dismissal in this district in cases similar to the one before this Court. *Vines, supra; In re Whitehead v. United States,* 1997 WL 732503 (M.D.Fla.1997); *In re Crayton,* 169 B.R. 243 (Bankr.S.D.Ga.1994). In *Whitehead,* the District Court noted "tax returns are essential to orderly administration of debtors' estates because in absence of a return, trustees are asked to blindly accept the debtor's statements as contained in their schedules." 1997 WL 732503 at *3 (quoting *Vines, supra* at 945). That Court further warned that a debtor's "adamant refusal to file income tax returns 'only reinforces ... [the] belief that he should not be permitted to take advantage of any presumption in favor of discharge without first providing a complete and accurate account of his financial affairs.' " *Id.* at *3 (quoting *Vines* at 945). Similarly, in *Crayton,* the bankruptcy court concluded the debtor's "failure to file his returns before filing his Chapter 13 plan, coupled with his failure for six months after filing [for bankruptcy] to bring himself into compliance with federal law constitute unmistakable manifestations of bad faith." 169 B.R. at 245.

Other circuits have affirmed dismissals predicated on the finding of lack of good faith. For example, in *In re Love,* the Seventh Circuit, considering the issue of good faith under §§ 1307 and 1325 stated:

> Bankruptcy is a remedy based in equity. As such, the good faith standard prevents debtors from manipulating the Code for wrongful purposes.

957 F.2d 1350, 1358–59 (7th Cir.1992) (citations omitted); *see also In re Marcellus,* 1997 WL 464100 (7th Cir.1997) (unpublished decision). The Third Circuit adopted that sentiment under a similar Chapter 13 dismissal scenario, *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996). Similarly, within the past year both the Fourth Circuit and the Ninth Circuit Bankruptcy Appellate Panel have subscribed to the same philosophy. *In re Tomlin,* 105 F.3d 933 (4th Cir.1997); *In re Leavitt,* 209 B.R. 935 (9th Cir. BAP 1997). The lack of good faith and feasibility argument has been similarly applied in Chapter 11 cases pursuant to 11 U.S.C. § 1112. *E.g., Eilertson,* 211 B.R. 526, 530 (D.S.C.1997) (objective futility results from debtor's failure to file their tax returns and subsequent frustration in the ability to determine feasibility of a plan until the returns are filed.) Lastly, one might argue that while dismissal is a severe sanction, utilized in only the most egregious of situations, it is proper here based on the "clear record of delay or contumacious conduct" by the Debtors. *Durham v. Florida East Coast Railway Co.,* 385 F.2d 366 (5th Cir.1967).

### III. CONCLUSION

The Debtors' actions herein and throughout the course of the adversary proceeding demonstrate a patent lack of good faith inherent in the requirements for filing a Chapter 13 case and warrant dismissal. The Debtors' bankruptcy petitions were based on a dispute with one creditor; namely, the IRS, whose proof of claim was prima facie evidence of an outstanding debt. Notwithstanding this Court's repeated and unequivocal orders, the Debtors willfully and intentionally refused to comply, by all means available including the filing of duplicative motions for reconsideration, a frivolous adversary proceeding and assorted appeals. Dismissal is amply merited and such dismissal of the main case will render the adversary proceeding moot and it must be similarly dismissed.

Accordingly, it is ORDERED, ADJUDGED AND DECREED the Debtors' Chapter 13 case, No. 97–4009–8B3 be, and the same is hereby dismissed with prejudice pursuant to 11 U.S.C. §§ 109(g), 105 and 349. The Debtors are barred from filing any subsequent bankruptcy case for a period of 180 days, and any such new filing is further conditioned upon the filing of their federal income tax returns. It is further

ORDERED, ADJUDGED AND DECREED the Defendants' Motion to Substitute United States as Proper Party Defendant and to Dismiss be and the same is hereby granted and Adversary Proceeding

97–920, styled *Cobb v. Internal Revenue Service, et al.* be, and the same is, hereby dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DECREED Plaintiffs/Debtors', John G. Cobb and Gloria E. Cobb's, Motion to Deny Defendants [sic] "Motion to Substitute and Dismiss" and Motion for Summary Judgement [sic] be and the same is hereby denied.