**In re Arno Josef BERTELT, Debtor.**

**Bankruptcy No. 97–10479–8G3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 1, 2000.

Andrew S. Forman, Tampa, FL, for debtor.

Donna A. Bucella, U.S. Attorney, Charles R. Wilson, U.S. Attorney, Adelaide G. Few, Assistant U.S. Attorney, Tampa, FL, for United States of America.

Philip A. Doyle, John A. Galotto, Trial Attorneys, Tax Division, U.S. Department of Justice, Washington, DC, United States of America.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

## ORDER ON UNITED STATES' MOTION TO DISMISS

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came on for final evidentiary hearing on United States' Motion to Dismiss filed on July 31, 1998. The Motion to Dismiss, filed by the United States of America (the "USA"), alleges bad faith on the part of Arno Josef: Bertelt (the "Debtor") in filing his bankruptcy petition, and seeks dismissal of the Debtor's Chapter 13 case pursuant to 11 U.S.C. § 1307(c).

### Background

The Debtor filed this Chapter 13 petition on June 25, 1997.

The Debtor is employed by Northwest Airlines, and has been employed by Northwest Airlines since at least 1986. (See USA Exhibit 4). At the time of the filing of this petition, the Debtor's current gross wages, salary, and commissions exceeded $40,000 annually. (USA Exhibit 10, Schedule I). In the two years preceding the filing of this petition, his "compensation for labor" exceeded $40,000 annually, and the "compensation for labor" of his spouse exceeded $33,000 annually. (USA Exhibit 11, Statement of Financial Affairs, question 1).

This is the third bankruptcy case filed by the Debtor.

On April 20, 1993, the Debtor filed a Chapter 7 petition, (Transcript of hearing, p. 25), and received his discharge on August 11, 1993. (USA Exhibit 2).

On October 19, 1993, the Debtor signed and subsequently filed his initial income tax return for 1989. The return consists of a Form 1040 with "zeros" or blanks up to Line 56. (There is an amount on Line 36 for one exemption allowed.) The "federal income tax withheld" line and "excess social security tax and RRTA tax withheld" line show payments made that total $3,306.40, and line 65 shows the amount of $3,306.40 to be refunded to the Debtor. Above the Debtor's signature is written "signed and submitted under duress." A separate one-page statement is attached to this return. (USA Exhibit 16).

Also on October 19, 1993, the Debtor signed his income tax returns for 1990, 1991, and 1992. These returns also consist of a Form 1040 and a statement by the Debtor, essentially the same as the original 1989 return described above. (USA Exhibits 17, 18, 19).

On April 15, 1994, the Debtor signed his 1993 tax return with some small variations on his submissions for the prior tax years. Line 7, Wages, Salaries, Tips, etc., is left blank instead of showing a zero. There is no amount on Line 58a, Excess Social Security Tax and RRTA Tax Withheld. A Schedule A is attached and Line 34, Itemized Deductions shows an amount. All of the federal income tax withheld is shown to be refunded to the Debtor. The same separate statement is attached to the return. (USA Exhibit 20).

On May 18, 1994, the Debtor filed a Chapter 13 petition. (USA Exhibit 3). In that case, the Internal Revenue Service ("IRS") filed an amended proof of claim in the amount of $29,936.60, for amounts due with respect to tax years 1988 through 1993. (See USA Exhibit 4).

The Court entered three opinions in that case:

1. *In re Bertelt*, 184 B.R. 603 (Bankr. M.D.Fla.1995). (USA Exhibit 4). The Debtor objected to the claim of the IRS on the basis that he did not have income which was subject to the income tax. The Court concluded:

In summary, the Debtor objects to the claim on the basis that the Internal Revenue Code does not define the term

"income". As discussed above, the Internal Revenue Code clearly includes compensation for services in the definition of gross income, uses gross income as the basis for determining taxable income, and imposes a tax on taxable income. The Debtor's wages are compensation for services, and the tax liability is clearly imposed. Accordingly, the claim of the IRS with respect to the Debtor's liability for taxes is valid, and the Debtor's objection should be overruled.

*Id.* at 607. In the opinion, the Court considered only the Debtor's objections to his liability for income taxes, and not the amount of the claim. Accordingly, the Court provided the Debtor with the opportunity to object to the amount of the claim of the IRS.

2. *In re Bertelt,* 206 B.R. 587 (Bankr. M.D.Fla.1996). (USA Exhibit 6). The Debtor filed an objection to the amount of the claim of the IRS. The Debtor objected to the amount of the claim because the Debtor had filed returns with "0.00" as income but the IRS had estimated an amount of tax. The Debtor also raised objections related to the statutory imposition of taxes, the regulations that implement the tax statutes, and the forms and procedures used by the IRS. The Court concluded that the objections were essentially the same contentions which the Debtor made in his earlier objection regarding liability for the taxes, and that his objections did not establish the invalidity of the amount of the claim. The objections were overruled, and the claim of the IRS was allowed in the amount of $29,936.60.

3. *Bertelt v. United States of America (In re Bertelt),* 206 B.R. 579 (Bankr. M.D.Fla.1996). (USA Exhibit 5). The Debtor also filed an adversary proceeding to determine the validity and extent of liens, since prior to the case the IRS had filed notices of federal tax liens for taxes due for 1988, 1989, 1990, and 1991. The Court concluded that the federal tax liens at issue were validly created, and that

notices were properly filed and perfected the liens.

Accordingly, the Debtor's liability for taxes, the amounts of the claim, and the validity of the lien of the IRS with respect to amounts due for tax years 1988 through 1993, were established in the Debtor's first Chapter 13 case.

The Debtor voluntarily dismissed his first Chapter 13 case on March 27, 1997. (USA Exhibit 7). Regarding the reason that he dismissed the first Chapter 13 case, the Debtor testified:

> Because I didn't get the result that I had desired, and I wanted to file, or contact the local office. I believed that I could negotiate with them to resolve these tax matters.

(Transcript p. 30).

The Debtor filed this Chapter 13 case on June 25, 1997, (USA Exhibit 8), three months after voluntarily dismissing his first Chapter 13 case.

In this case, the Debtor scheduled the IRS as a creditor holding an unsecured, nonpriority claim in the amount of $12,703 for "1040 Taxes Due" from 1988 through 1993, (USA Exhibit 10), although these are the same tax years as were addressed in the orders described above which overruled objections to the claim in the amount of $29,936.60, and found that liens were perfected.

The Chapter 13 Plan in this case provides for payment to only one creditor, the IRS. The Debtor's plan does not show the IRS as a secured or priority creditor. The plan states that the IRS has only an unsecured claim in the total amount of $12,000, and provides that $8,000 (66%) is to be paid on this claim over 36 months. The Chapter 13 Plan is dated July 10, 1997. (USA Exhibit 12).

On August 5, 1997, the Debtor signed three federal income tax returns.

One of the returns signed by the Debtor on August 5, 1997, was an amended return for the calendar year 1994. According to

his explanation on Form 1040X, the Debtor "did not include Form 2555 'Foreign Earned Income' on original filing" and "did not include Federal income tax amounts withheld on original filing." On Form 2555 "Foreign Earned Income" the Debtor listed his foreign address as "... Tampa, Florida, America." His employer's foreign address is listed as "... St. Paul, Minnesota, America." In response to the question "Of what country are you a citizen/national?" the Debtor stated, "united states of America and/or Florida, America." On page 2, item 18 of Form 2555 the Debtor stated he was "physically present in a foreign country or countries for the entire 12–month period." In Parts VII and VIII of Form 2555 the Debtor claimed a foreign earned income exclusion of $39,-815.00, the wages shown on his 1994 W–2 Statement. The sixth page of Debtor's 1994 amended return is an "Attachment to 1994 Federal Tax Forms Regarding Position Taken Herein." It appears from such attachment that the Debtor believes that the "United States" is used only in the "geographic sense" and refers only to the District of Columbia and territories over which the federal government has exclusive jurisdiction, thus entitling the Debtor to exclude his wages from Northwest Airlines from being subject to federal income taxation. (USA Exhibit 21).

The Debtor's 1995 federal income tax return, signed August 5, 1997, also contains a Form 2555, Foreign Earned Income, with the same responses and attachment as described above. (USA Exhibit 22).

The Debtor's 1996 return, signed August 5, 1997, is essentially the same, with Form 5329, Additional Taxes Attributable to Qualified Retirement Plan, showing an early distribution of $6,442. (USA Exhibit 23).

The IRS filed a claim in this case on October 30, 1997. The claim was for the total amount of $39,516.80, with $12,975.00 as secured, $2,823.42 as unsecured priority, and $23,898.39 as unsecured nonpriority. (USA Exhibit 13A, attachment).

The Debtor served objections to the claim of the IRS on December 8, 1997 (USA Exhibit 13), and served amended objections on January 28, 1998 (USA Exhibit 13A). The first objections raised by the Debtor included the following objections:

1. The proof of claim "fails to 'conform substantially' to the appropriate official form."

2. The proof of claim "is not properly executed."

3. The creditor's "purported security interest and claim in general have not been properly perfected."

4. "The creditor did not evidence *the statutes* and the *statutes implementing regulations* that: a) required the Debtor to file a *1040 Form* or *any form.* b) required the Debtor to pay a *specific tax* (code section). c) gives the Creditor *authority to assess a tax* on the Debtor. d) gives the Creditor *authority to collect the tax* from the Debtor." [Emphasis in original].

5. The claim "is based on returns filed not by the Debtor, but by the creditor."

6. All penalties and interest based on occurrences prior to April 20, 1990, were discharged by the Debtor's prior case filed on April 20, 1993.

The amended objections filed by the Debtor included:

1. "... the proof of claim fails to designate that these taxes are owed either to the Internal Revenue Service or the United States of America, or both, and accordingly is deficient in that regard."

2. The signature on the proof of claim was inappropriate.

3. For one of the elements of the claim, the proof of claim does not identify the legal theory or a federal regulation pursuant to which the assessment was made.

4. The proof of claim erroneously asserts that the Debtor failed to file his 1996 return.

5. On his bankruptcy schedules, the Debtor lists refunds totaling $15,221.00 for the tax years 1994, 1995, and 1996, which should be credited against any secured liability the Debtor may have to the Internal Revenue Service, The United States, or The United States of America.

On September 12, 1998, the Debtor signed an amended income tax return for 1989. The amended 1989 income tax return consists of a completed Form 1040 (with no zeros or exclusions of income, but with line 7 showing "compensation for labor" of $24,686 and line 31 showing adjusted gross income of $27,293), a Schedule A showing itemized deductions totaling $2,327, a Schedule D, Capital Gains and Losses, showing a net short-term gain of $2,493, and a copy of the Debtor's W–2 Statement for 1989. On the amended 1989 tax return, the tax is computed, the tax withheld is credited, and the income tax due is shown as $2,969. Above his signature the Debtor has written "with Reservation of All Rights, without Prejudice." There is no separate page of Debtor's statements attached to this return. (USA Exhibit 16).

On November 3, 1998, the Court entered an order on the Debtor's amended objection to claim that provided as follows:

1. That the Debtor's Amended Objection to the Claim of the Internal Revenue Service is hereby denied, without prejudice.

2. That the Debtor shall, within 20 days of this Order, file a Second Amended Objection covering the four (4) issues enumerated at the hearing as follows:

A. The issue of dischargeability of the 1989, newly filed return.

B. The liability arising from the newly filed 1996 return.

C. The dischargeability of penalties for 1988 and 1989.

D. The dischargeability of the penalties with respect to the Proof of Claim; general unsecured claim.

The IRS filed an amended proof of claim. (USA Exhibit 15). The amended proof of claim includes amounts due with respect to tax years 1988 through 1992 and 1994 through 1996. The amended proof of claim is for the total amount of $32,455.17, including a secured amount of $14,497.95, an unsecured priority amount of $11,276.29, and an unsecured general amount of $6,681.93. The Debtor filed an objection to the amended proof of claim. (Transcript p. 48).

At the final evidentiary hearing on the Motion to Dismiss the Debtor's Chapter 13 case, counsel for the United States entered 23 items into evidence. Eight of the items were the federal income tax returns filed by the Debtor for the years 1989 (amended and original), 1990, 1991, 1992, 1993, 1994, 1995, and 1996.

The Debtor testified at the hearing on the United States' Motion to Dismiss, but did not offer any documentary evidence.

With respect to the returns for 1994, 1995, and 1996, the Debtor testified that he was physically present in a foreign country or countries for the entire 12 month periods covered by these returns. The Debtor testified that he was in "the Florida State, which is foreign to the quote, unquote United States, which has a sovereignty over the District of Columbia, which is the federal entity." (Transcript p. 46). The Debtor then testified that he has subsequently filed new returns for these years on a "1040 N–R form." (Transcript p. 47). "The theory is that the income is not federally connected." (Transcript p. 48). "It's not from a federal source." (Transcript p. 48). The Debtor indicated that the Internal Revenue Code provides an exemption because Northwest Airlines is a private entity and pays him in the State of Florida, rather than in Guam or the District of Columbia; therefore, that income

is not subject to federal income tax. (Transcript p. 48).

With respect to the amounts due for 1988 through 1993, which were the subject of the Court's orders described above, the Debtor did not schedule these amounts in the schedules that he filed in this case, and did not provide for payment of these amounts in the plan that he filed in this case. The Debtor testified that subsequent to the Court's orders, he had filed returns which show credits. (Transcript p. 50). Apparently, these credits were also for foreign earned income. (Transcript pp. 56–57).

### Discussion

In its Motion to Dismiss, the USA alleges that the Debtor's multiple bankruptcy filings, his failure to acknowledge his debt to the Internal Revenue Service, his frivolous objections to claim, and his frivolous discovery requests and responses all indicate a lack of good faith in filing the current petition. (Paragraph 25).

The Debtor acknowledges that his filing was strategic and intentional, but that intention does not equate with filing in bad faith. Debtor argues that his filing was to preserve his income and his assets, and to determine, through the process of Chapter 13, whether or not he owed the IRS money. (Transcript, pp. 63–64).

The Court must determine whether, based on the evidence introduced at the hearing, the Debtor filed his current Chapter 13 petition in bad faith.

Section 1307(c) of the Bankruptcy Code provides that on request of a party in interest or the United States trustee, and after notice and a hearing, the Court may dismiss a case for cause. Courts are uniform in holding that "cause" for dismissal includes lack of good faith. See *In re Hovind,* 197 B.R. 157, 160 (Bankr.N.D.Fla.1996), *In re Graffy,* 216 B.R. 888, 891 (Bankr.M.D.Fla.1998), *In re Leavitt,* 171 F.3d 1219, 1224 (9th Cir.1999), and the cases cited therein. Several Circuit Courts of Appeals have expressly determined that lack of good faith is sufficient cause for dismissal of a case under Chapter 13. As with the evaluation of good faith necessary for the confirmation of a Chapter 13 plan, the courts do not look to a specific test or definition of good faith, but instead make a fact intensive inquiry looking at the totality of circumstances. *In re Love,* 957 F.2d 1350, 1355 (7th Cir.1992); *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994); *In re Gier,* 986 F.2d 1326, 1329 (10th Cir.1993); and *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996). In an Eleventh Circuit Court of Appeals case, *In re Waldron,* 785 F.2d 936 (11th Cir.1986), husband and wife debtors filed a Chapter 13 petition solely to reject an unprofitable option agreement that they had previously entered. The Court, in determining that debtors had not filed their petition in good faith, stated "... whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives." *Id.* at 941.

The Court notes the pattern of the Debtor's tax returns. First, the Debtor filed tax returns with line items of zeros for 1989 to 1993. Following this Court's determination that Debtor's wages were taxable income in his first Chapter 13 case, the Debtor filed three federal tax returns (1994, 1995, and 1996) with a different theory of zero tax liability. These three returns showed gross income amounts, with all income then excluded by a credit for "Foreign Earned Income." The Debtor requested income tax refunds in his returns due to the foreign earned income exclusion. At the final evidentiary hearing the Debtor was questioned regarding his statement in the 1994, 1995, and 1996 tax returns that he was "physically present in a foreign country or countries for the entire 12–month period." The U.S. attorney asked, "What foreign country were you physically present in?" The Debtor's response was "It was in a country foreign United States of America in the Florida State, which is foreign to the quote, un-

quote, United States, which has a sovereignty over the District of Columbia, which is the federal entity." (Transcript p. 46).

The Debtor then explained that, "... there subsequently have been filed new returns through a tax professional that have been filed for these years" and that "those filings are on a 1040 N–R form." (Transcript p. 47). The Debtor testified that the exemption is allowed because the income is not federally connected (Transcript p. 48), and that the income is not from a federal source. (Transcript p. 48). The Debtor indicated that because Northwest Airlines is a private entity and pays the Debtor in the State of Florida, rather than in Guam or the District of Columbia, the income is not subject to federal income tax, and the income tax code provides an exemption. (Transcript p. 48).

With respect to the returns for 1988 through 1993, which were the subjects of the court's orders described above allowing the claims in the amount of $29,936.60, and finding that liens filed by the IRS were perfected, the Debtor testified that he did not provide for payment of those liabilities in this case because he subsequently filed returns showing credits. (Transcript p. 50). Apparently, these credits were also for foreign earned income. (Transcript pp. 56–57).

The Debtor did not enter any of the subsequent tax returns into evidence at the hearing.

The Eleventh Circuit Court of Appeals has considered the contention that a resident of one of the states resides in a "foreign country" and that the United States has jurisdiction over only Washington, D.C., the federal enclaves within the states, and the territories and possessions of the United States. The Eleventh Circuit Court of Appeals found this contention to be "utterly without merit." *United States v. Ward,* 833 F.2d 1538, 1539 (11th Cir.1987).

Other courts have also dealt in the same summary fashion with the arguments that

the Debtor makes. See *In re Walters,* 166 B.R. 119 (Bankr.N.D.Ind.1993), *O'Driscoll v. IRS,* No. CIV.A.91–2074, 1991 WL 133417 (E.D.Pa. July 16, 1991), *Larue v. Collector of Internal Revenue,* No. 95–3036, 1995 WL 459300 (C.D.Ill. May 8, 1995) and the cases cited therein for the rejection of any arguments by Debtor that he is entitled to income tax refunds due to his status as a non-resident alien or due to the exclusion of his income as "foreign earned."

It should be noted that on September 12, 1998, the Debtor signed an amended tax return for 1989 which did not show zeros, had no exclusions of income, and showed an additional tax liability on the part of the Debtor of $2,969. This return, which the Debtor prepared, appears to be in response to the initial claim of the IRS in this case. The amended claim of the IRS shows a revised tax due of $2,885 (excluding penalties and interest) for 1989, assessed as of February 22, 1999. In his amended 1989 return the Debtor completed a Schedule D which calculated a net short-term gain. (The IRS had apparently been relying on the 1099–B forms attributed to Debtor in calculating Debtor's tax liability for 1989; the 1099–B shows gross proceeds from the sale of securities. A Schedule D must be filed to provide the basis in the securities and thus the net gain). Despite the Debtor's assertions that he has no federal income tax liability for 1990 through 1996, he is capable of preparing a valid income tax return that significantly reduces his total liability (for taxes, penalties and interest) for 1989.

Various courts have dismissed Chapter 13 cases with prejudice for failure to file tax returns. See *In re Morimoto,* 171 B.R. 85 (9th Cir. BAP 1994); *Vines v. IRS (In re Vines),* 200 B.R. 940 (M.D.Fla.1996); and *In re Cobb,* 216 B.R. 676 (Bankr. M.D.Fla.1998). The court in *In re Hahn,* 200 B.R. 249 (M.D.Fla.1995) dismissed a Chapter 13 case with prejudice due to a debtor's lack of good faith when the debtor filed "declarations" in lieu of filing tax

return forms. In *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637 (9th Cir. BAP 1996), a debtor filed a Chapter 13 case after completion of an earlier Chapter 7 case. Instead of valid tax returns the debtor filed statements denying that "he was a 'U.S. resident living or working within any district, county, state, or land subject to the (imperial) taxation powers of the U.S.'" *Id.* at 640. The Court noted that, far from acknowledging the taxes he owed, Greatwood contended that the IRS owed him a refund for over $6,000 in withholding taxes paid to the IRS by his employer due to his various theories of zero tax liability. This use of the bankruptcy court by the debtor solely as an alternative forum for the resolution of a tax dispute was indicative of the debtor's bad faith and the order of the bankruptcy court dismissing the debtor's Chapter 13 case was affirmed. *Id.* at 641.

Courts have also determined that tax returns filed with zeros for line items are not proper tax returns for purposes of Chapter 13 cases and warrant dismissal. *Hopkins v. Unites States (In re Hopkins)*, 201 B.R. 993 (D.Nev.1996) In *Hopkins* the District Court held that, "Under the totality of the circumstances, the Hopkinses' filing of frivolous tax returns showing no intention to pay taxes does not distinguish them from the Chapter 13 petitioners in Morimoto and Greatwood whose petitions were dismissed for bad faith." *Id.* at 996. In the Chapter 13 case of *In re Ingram*, No. 96–21260–BKC–PGH, 1996 WL 788401 (Bankr.S.D.Fla. Dec.5, 1996) the debtor filed tax returns with line items of zeros and a Form 2555–EZ Foreign Earned Income Exclusion attached. The debtor claimed he earned foreign income in the "Republic of Florida." In *Ingram* the Bankruptcy Court found that such debtor had no intention of complying with the provisions of the Internal Revenue Code and dismissed his case with prejudice for one year. *Id.* at *3.

At the hearing, in response to the U.S. attorney's question as to why the Debtor dismissed his first Chapter 13 case, he replied, "Because I didn't get the result that I had desired, and I wanted to file, or contact the local office. I believed that I could negotiate with them to resolve these tax matters." (Transcript p. 30). However, within five months of requesting dismissal of his first Chapter 13 case, the Debtor signed tax returns showing no tax liability because he asserted that he was entitled to a foreign earned income exclusion for the wages he earned in Florida. The Court does not find the Debtor's testimony, that he believed that he could negotiate with the local IRS office to resolve his tax problems based on his various theories of zero tax liability, credible.

■ The pattern of the Debtor's actions in dealing with the IRS shows a lack of good faith. This conclusion is required from the combination of several factors: the initial tax returns, the voluntary dismissal of his previous Chapter 13 case because the Debtor did not obtain the "result he desired," the Chapter 13 schedules and plan filed in this case with only a $12,000 unsecured claim attributed to the IRS, the returns for 1994 through 1996 and the subsequent returns for 1988 through 1993 based on a contention which is "utterly without merit," all evidence a lack of good faith on the part of the Debtor in filing his current Chapter 13 petition.

Several bankruptcy courts have looked with disfavor upon solvent debtors' use of the filing of a Chapter 13 petition to thwart the collection efforts of the IRS. See *In re Brooks*, 216 B.R. 838 (Bankr. N.D.Okl.1998), *In re Robertson*, 206 B.R. 826 (Bankr.E.D.Va.1996), *In re Meisner*, 155 B.R. 519 (Bankr.D.Neb.1993), and *In re Fooks*, 139 B.R. 623 (Bankr.D.Md.1992). In *Robertson*, the debtor, in his third Chapter 13 case, had a substantial tax debt due to a failure to file income tax returns and continued to list his debt to the IRS at substantially lower amounts than claimed by the IRS. The court dismissed the debtor's Chapter 13 case with prejudice for a period of 417 days, finding that the debtor

was using the bankruptcy process purely to delay the payment of his debt to the IRS. 206 B.R. at 831.

■ Chapter 13 petitions must be filed with a sincere effort to repay creditors. *In re Schaitz,* 913 F.2d 452, 454 (7th Cir. 1990). It is clear to the Court that the Debtor filed his current Chapter 13 petition to delay attempts by the IRS to collect the substantial tax debt he owes due to his failure, over the last decade, to file meaningful tax returns. The Debtor is certainly capable of filing a valid tax return, as evidenced by his amended 1989 tax return described above. However, as indicated by his subsequent returns, it appears that the Debtor does not have the good faith intention to ascertain and pay the amounts due to his sole creditor, the IRS.

■ The usual remedy for a bad faith filing is dismissal "with prejudice," which works to prohibit the filing by a debtor of any case under Title 11. The authority for such a dismissal arises under § 105(a), which empowers this Court to issue any order, process, or judgment that is necessary or appropriate to prevent abuse of the bankruptcy system. *In re Armwood,* 175 B.R. 779, 787 (Bankr.N.D.Ga.1994). In the instance where a debtor has attempted to abuse the Bankruptcy Code in connection with his continued failure to file proper tax returns during the pendency of his bankruptcy case, courts have dismissed Chapter 13 petitions with prejudice for various lengths of time. In the cases cited herein, the time periods barring refiling include two years *In re Graffy,* 216 B.R. 888 (Bankr.M.D.Fla.1998), 417 days *In re Robertson,* 206 B.R. 826 (Bankr.E.D.Va. 1996), one year (*In re Ingram,* No. 96–21260–BKC–PGH, 1996 WL 788401 (Bankr.S.D.Fla. Dec.5, 1996)) and 120 days (*In re Hahn,* 200 B.R. 249 (M.D.Fla.1995)). It is in the Court's discretion, pursuant to its powers under § 105(a), to determine the appropriate length of time to bar refiling of the Debtor's bankruptcy petition.

## Conclusion

■ In his first Chapter 13 case, the Debtor had the full opportunity to explain the reasons that the compensation he was paid for his labor for tax years 1988 through 1993 was not subject to income tax. The Court considered his arguments, and found that the arguments had no merit. See *In re Bertelt,* 184 B.R. 603 (Bankr. M.D.Fla.1995).

In that case, the Debtor had the full opportunity to explain the reasons that the amount of the claim of the IRS with respect to income taxes due for tax years 1988 through 1993 was not correct. The Court considered his arguments, and found that the arguments were similarly without merit. See *In re Bertelt,* 206 B.R. 587 (Bankr.M.D.Fla.1996).

Also in that case, the Debtor had the full opportunity to explain the reasons that the liens filed by the IRS were not valid. The Court considered his arguments, and found that the liens were validly perfected. See *Bertelt v. United States (In re Bertelt),* 206 B.R. 579 (Bankr.M.D.Fla.1996).

Because the Debtor was not satisfied with the results in his first Chapter 13 case, the Debtor dismissed the case and within three months filed this Chapter 13 case.

In this case, the Debtor asserts the position with respect to the tax years covered by the Court's orders in the earlier case (1988–1993), as well as with respect to tax years subsequent to the filing of the earlier case (1994–1996), that since his employer is based in Minnesota and he resides and works in Florida, he is a non-resident and his earned income is not subject to the U.S. income tax. In the words of the Eleventh Circuit Court of Appeals, this position is "utterly without merit."

In the Debtor's earlier case, and in this case, the Court has considered the arguments made by the Debtor, and the authority upon which he relies, and has found these without merit. For example, in *In*

re Bertelt, 184 B.R. 603 (Bankr.M.D.Fla. 1995), the Court summarized the cases cited by the Debtor, and it is clear that these cases were not relevant to the issues in contention. In this case, the Court has reviewed the cases cited by the Debtor in his attachment to his 1994, 1995, and 1996 tax returns in which he claims that he is entitled to the exclusion for foreign earned income, and they also do not support his contentions. See *Caha v. United States,* 152 U.S. 211, 14 S.Ct. 513, 38 L.Ed. 415 (1894), *Foley Bros v. Filardo,* 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680 (1949), and *United States v. Perkins,* 163 U.S. 625, 16 S.Ct. 1073, 41 L.Ed. 287 (1896). The Debtor indicated at the hearing that he had filed subsequent returns for these years, stating that "[t]he theory is that the income is not federally connected" and "It's not from a federal source."

It is time in this case to consider the statements of the United States District Court for the Central District of Illinois:

> ... In a nutshell, Plaintiffs claim that they are exempt from federal income tax because the state of Illinois is not a "state" as defined by Congress in the Internal Revenue Code, rather, Illinois is a member of the "union." Accordingly, since Illinois is not a state for federal income tax purposes, Plaintiffs argue that they are non-resident aliens and thus, exempt from federal income tax.

> We refuse to expend the time necessary to comment on each aspect of Plaintiffs' claim. Instead, we cite Plaintiffs to a fraction of the cases across the country that have readily and routinely rejected identical or similar arguments. See, e.g., *Caniff v. Commissioner,* 52 F.3d 328, 1995 WL 216861 (7th Cir.1995) ("[Petitioner's] claim that he is a non-resident alien is preposterous on its face. He acknowledges that he lives in Indiana."); *Solomon v. Commissioner,* 42 F.3d 1391, 1994 WL 669516 (7th Cir. 1994) ("We have also specifically rejected the contention that citizens of the states are not citizens of the Unites

States for tax purposes."); *United States v. Ward,* 833 F.2d 1538, 1539 (11th Cir.1987) ("We find each of appellant's contentions to be utterly without merit."); *United States v. Studley,* 783 F.2d 934, 937 (9th Cir.1986) ("[A]dvancement of such utterly meritless arguments is now the basis for serious sanctions imposed on civil litigants who raise them."); *Minovich v. Commissioner,* 67 T.C.M. (CCH) 2078 (1994) ("We see no need to waste our time by addressing each of petitioner's groundless contentions."); *Fox v. Commissioner,* 65 T.C.M. (CCH) 1831 (1993) ("Petitioner's 14th Amendment argument is frivolous and has been rejected in other similar tax protester cases."); *Stallard v. Commissioner,* 64 T.C.M. (CCH) 993 (1992) ("Petitioner's arguments are no more than stale tax protester contentions long dismissed summarily by this Court and all other courts which have heard such contentions."); *Jackson v. Commissioner,* 62 T.C.M. (CCH) 920 (1991) ("The short answer to petitioner's arguments is that petitioner is not exempt from federal income tax.").

*Larue v. Collector of Internal Revenue,* No. 95–3036, 1995 WL 459300, at *2 (C.D.Ill. May 8, 1995).

Additionally, the statement of the United States District Court for the Middle District of Florida is now appropriate:

> [The Debtor] came to this court of equity seeking to readjust his debts. He was given a full and fair opportunity to support his objection to the IRS's claim by offering evidence that he owed no taxes or that the claim was overstated. Instead, he chose to pursue specious legal arguments. That effort has failed and the bankruptcy court's decision to dismiss with prejudice is upheld.

*In re Vines,* 200 B.R. 940, 950 (M.D.Fla. 1996).

The Court has expended a substantial amount of time with this case and with the previous case of the Debtor. The Court now concludes that the Debtor has not

filed this case in the sincere effort to determine and pay his liabilities for federal income taxes, but that he is misusing the bankruptcy process to inappropriately defer and delay the payment.

For these reasons, the Motion to Dismiss the Debtor's Chapter 13 case should be granted, with prejudice, for a period of 180 days.

Accordingly;

**IT IS ORDERED** that:

1. The United States' Motion to Dismiss the Debtor's Chapter 13 case is granted.

2. This case is dismissed.

3. The Debtor, Arno Josef: Bertelt, is barred from refiling any petition under Title 11 of the United States Code for a period of 180 days from the date of entry of this order.