In re Kent E. HOVIND, Debtor.

**Bankruptcy No. 96–04256.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

June 5, 1996.

Benjamin Beard, Asst. U.S. Atty., Pensacola, FL, for IRS.

Bruce Kaufman, Largo, FL, for debtor.

Leigh Hart, Trustee, Tallahassee, FL.

### *SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW*

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER was heard May 23, 1996 on the motions of the United States, through the Internal Revenue Service ("IRS") and the chapter 13 trustee to dismiss this chapter 13 case. At the conclusion of the hearing, I orally granted the IRS' motion and announced my findings of fact and conclusions of law on the record in open court. I hereby supplement those oral findings of fact and

conclusions of law with this written supplement.

The debtor, Kent Hovind, filed this case pro se on March 1, 1996. Accompanying his petition for relief, the debtor filed the schedules and statement of affairs required by 11 U.S.C. § 521(1) together with a preprinted form chapter 13 plan on which he indicated monthly payments to be made of $60.00 per month. In his schedules and statement of affairs, the debtor represents that he is an evangelist employed by God and that he receives no income, has no expenses, owns absolutely no property, and has no creditors except for the IRS with a claim of $10,602.31. On March 8, 1996, one week after the filing of his petition, the debtor filed a pleading entitled "Petition for Return of Seizure" requesting an order requiring the IRS to return to the debtor unspecified property which it had apparently seized. The only clue as to what property this "Petition" referred to was contained in Item 4(b) of the Statement of Financial Affairs describing any property which has been garnished or seized under legal process within one year of the filing of the petition for relief. There the debtor identifies three vehicles, a trailer, cash, and a bank account which had apparently been levied on by the IRS on February 7, 1996.

On March 25, 1996, the IRS filed its Motion to Dismiss alleging that this chapter 13 case was filed in bad faith for the sole purpose of avoiding payment of federal income taxes. Alternatively, by its motion, the IRS sought relief from the automatic stay to enable it to retain the property it had levied upon prepetition. A hearing was scheduled for April 18, 1996 on the debtor's "Petition for Return of Seizure" but was continued at the request of the debtor when he retained an attorney approximately one week prior to the scheduled hearing. The hearing was rescheduled for May 23, 1996, to be conducted in conjunction with the motions of the IRS and the trustee to dismiss the case. Fifteen minutes prior to the time scheduled for the hearing, the debtor through his counsel filed another chapter 13 plan which provided for payment in full of the IRS claim over a period of sixty (60) months with the debtor submitting $432.33 per month to the trustee.

The evidence presented at the hearing paints a clear portrait of a tax protester whose sole purpose in seeking relief under chapter 13 was to obtain the release of property seized by the IRS. The IRS in this case has filed a proof of claim setting forth a secured tax claim in the amount of $10,461.36 for the tax years 1989, 1990, and 1991, and a priority claim in the amount of $10,690.46 for the years 1992, 1993, 1994, and 1995. The IRS records reflect that notwithstanding his earning of income during the years in question, the debtor has failed to file any federal income tax returns for those tax years for which the IRS has filed its proof of claim. Furthermore, the IRS has no record of the debtor ever having filed a federal income tax return.[1]

In January of 1996, IRS Revenue Officer M.C. Powe was assigned to collect taxes which had been assessed against the debtor for the years 1989, 1990 and 1991 as well as to properly determine the debtor's tax liability for the years 1993 and 1994. In carrying out those duties, Officer Powe served a summons directing the debtor to appear before her on February 13, 1996 to produce for examination certain records and to give testimony in order for her to properly compute the debtor's tax liability for the years 1993 and 1994. Rather than appearing and producing any of the records set forth in the summons, the debtor submitted a letter to Revenue Officer Powe claiming that he is "a non resident alien to the federal government," that he cannot confirm nor deny that he received income nor that he was a taxpayer under the IRS Code, and demanding that the IRS provide him with certain items proving that he was required to pay taxes.

On February 16, 1996, the IRS levied upon the following items of personal property in execution of its Tax Lien filed on June 21, 1995 for the 1989–91 taxes:

a) a 1989 GMC van

---

1. The IRS prepared tax returns for the debtor for the years 1989, 1990 and 1991 based on earnings reports submitted by entities which had paid him wages during those periods. The IRS estimated taxes for the years 1992–1995.

b) a 1987 Mercury Grand Marquis

c) a 1984 Honda

d) a homemade trailer

e) $54.00 in cash

Soon thereafter, on February 20, 1996, the debtor prepared and had served on Revenue Officer Powe by the Escambia County Sheriff's Department a document entitled "Asseveration [sic] of Invalid Lien/Levy" in which the debtor contended that the IRS tax lien/levy was invalid and that he was an inhabitant of the "Florida Republic". The debtor further threatened to sue Revenue Officer Powe in federal criminal court for her actions and did in fact file a lawsuit against her individually in federal district court, which was later withdrawn.

Notwithstanding the debtor's listing under penalty of perjury in his schedules and statement of affairs that he has no income, has no expenses, and owns no property, the evidence shows otherwise. Records from the State of Florida, Department of Highway Safety and Motor Vehicles ("DHSMV") reflect three motor vehicles, a 1987 Mercury, 1989 GMC, and 1984 Honda titled in the debtor's name. Real property records from Escambia County, Florida reflect that the debtor and his wife purchased a home on December 16, 1993 from Ernest and Voncile Hicks and gave the Hicks, a mortgage in the amount of $60,000 encumbering the home. The testimony of Mrs. Hicks together with a closing statement from the sale, reflects a purchase price of $90,000 for the house with the debtor paying $30,369.43 down. Mrs. Hicks' testimony further established that the debtor makes regular payments on the mortgage and has in fact paid in advance on the mortgage. Typically, payments are made with third party checks made payable to the debtor and endorsed over to Mrs. Hicks. In February, 1995, the debtor paid $3,265.00 for the installation of central heating and air conditioning in the house. Additionally, the debtor has three children all of whom attend a private Christian school for which he and his wife pay approximately $4,800.00 per year in tuition and fees.

An inventory of the debtor's van following seizure by the IRS revealed video and audio tapes and printed literature on creationism published by the debtor. Included in the literature is an order form containing prices designated as "suggested donations." The "suggested donation" for the video tapes ranged from $9.95 each to $14.95 each with the "donation" for a set of all eighteen (18) of the debtor's videos of $180.00.

In the face of all of the foregoing, the debtor apparently maintains that as a minister of God everything he owns belongs to God and he is not subject to paying taxes to the United States on the money he receives for doing God's work. While in his correspondence to the IRS he denies being a tax protester, the evidence overwhelmingly establishes otherwise. At the hearing on this motion, debtor's counsel represented to the court that the debtor was now ready to do everything which was required of him to comply with the Bankruptcy Code and the Internal Revenue Code including the filing of tax returns and payment to the trustee in accordance with the plan filed immediately prior to the hearing. However, the debtor himself never took the stand during the hearing to testify to that nor has he ever filed any amended schedules and statement of affairs to reflect his true financial status. Given this debtor's history and the documentary evidence presented, I cannot find that this debtor has any intention of complying with the Bankruptcy Code nor with the Internal Revenue Code.

Dismissal of a chapter 13 case is provided for pursuant to 11 U.S.C. § 1307(c) which provides as follows:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28 [28 USC §§ 1911 et seq.];

(3) failure to file a plan timely under section 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; or

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521.

While a lack of good faith in the filing of a chapter 13 case is not specified in Section 1307(c), the language of that section, with the exception of the specific language in several of the enumerated examples of cause, is virtually identical to the language of 11 U.S.C. § 1112(b). It has been well established in this circuit that "cause" under § 1112(b) for dismissal of a chapter 11 can include a lack of good faith. *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1989); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988). Accordingly, the same reasoning should apply under § 1307(b) to permit dismissal of a case for lack of good faith.

In most instances, the inquiry into the good faith or lack thereof of the debtor in a chapter 13 case is conducted in conjunction with confirmation of a chapter 13 plan. In *In re Scott*, 166 B.R. 459 (Bankr.M.D.Fla. 1994) the court held that there is no authority to support the proposition that a chapter 13 case may be dismissed for lack of good faith as opposed to a chapter 11 case which may be dismissed at the very beginning of the case. The court held that it was premature to consider a motion to dismiss until confirmation of a plan had been considered. Even the leading cases from the 11th Circuit, *In re Kitchens*, 702 F.2d 885 (11th Cir.1983) and *In re Waldron*, 785 F.2d 936 (11th Cir. 1986) focus on good faith in connection with the plan rather than the initial filing. However, in *Waldron*, the court stated that "accordingly, whenever a chapter 13 petition appears to be tainted a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. *Waldron*, 785 F.2d at 941. While the court was considering an appeal from an order confirming a chapter 13 plan, the court did make an explicit finding of bad faith and ordered a dismissal of the Waldron's petition rather than just a denial of confirmation.

The dismissal of chapter 13 cases as bad faith filings as opposed to bad faith in the proposal of a plan has been upheld of by the Bankruptcy Appellate Panel for the Ninth Circuit in two cases with striking similarities to the instant case. In *In re Morimoto*, 171 B.R. 85 (9th Cir. BAP 1994) the court held that a tax protester's chapter 13 petition was properly dismissed as a bad faith filing based in large part on her failure to file federal income tax returns. Likewise in *In re Greatwood*, 194 B.R. 637 (9th Cir. BAP 1996), the court once again held that a chapter 13 case was properly dismissed as a bad faith filing where the debtor, a tax protester, had failed to file federal income tax returns prepetition, denied that he owed any income tax, and failed during the nine months that his chapter 13 case was pending to file any plan which proposed payments to Internal Revenue Service. The court further held that "to use the bankruptcy court solely as an alternative forum for the resolution of a tax dispute is not a proper use of the bankruptcy code. On that basis alone the bankruptcy court could have. dismissed the case for bad faith in accordance with § 1307(c)". *Greatwood*, 194 B.R. at 641.

 While I concur with Judge Paskay in *In re Scott*, that ordinarily a chapter 13 case

should not be dismissed for lack of good faith prior to consideration of a chapter 13 plan, under limited circumstances such as those presented in this case and those presented in the *Morimoto* and *Greatwood* cases, a chapter 13 case may properly be dismissed for lack of good faith prior to consideration of any chapter 13 plan.

■ Here, the debtor, who has failed to acknowledge his obligations as a citizen and taxpayer of the United States, seeks to utilize this taxpayer supported court in order to thwart the lawful collection efforts of the Internal Revenue Service. While questioning his legal status as a "taxpayer", the debtor has completely ignored the eligibility requirement of 11 U.S.C. § 109(e) which provides "only an individual with regular income ... may be a debtor under chapter 13 of this title". In his own filings which were signed under a declaration under penalty of perjury that the information provided is true and correct, the debtor claimed he had no income. Thus, he should clearly be ineligible to be a debtor under chapter 13. Counsel for the debtor argued at the hearing that pleading alternative theories is permitted and sanctioned in our court system. This argument, when made in the context of sworn schedules and statements of affairs in connection with a bankruptcy filing, is patently absurd. Such documents are not pleadings in an adversary context asserting a position, and as such are specifically excluded from the application of F.R.B.P. 9011. Rather, these documents are intended to contain facts which are to be declared to be true and correct under penalty of perjury.

The debtor having failed to file his federal income tax returns for at least the years 1989 through 1995, having resisted collection efforts by the IRS, and having provided false information in his schedules and statement of affairs in connection with this case, I find that the debtor filed this petition in bad faith and as such the petition is subject to dismissal for cause under the provisions of 11 U.S.C. § 1307(c).

DONE AND ORDERED.