T.C. Memo. 2006-143

UNITED STATES TAX COURT

KENT E. HOVIND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11894-05L.                    Filed July 6, 2006.

<u>Peter Gibbons</u>, for petitioner.

<u>Karen Nicholson Sommers</u>, for respondent.


MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  This matter is before us under Rule 121 on the parties' cross-motions for summary judgment.  The underlying issue in this so-called collection "due process" case involves the appropriateness of respondent's proposed levy action against petitioner's property arising from jeopardy assessments respondent made against petitioner.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

For purposes of the instant cross-motions for summary judgment, and the respective objections thereto, the record consists primarily of documents set forth in respondent's administrative file, the pleadings filed herein, and the parties' cross-motions for summary judgment and attachments thereto.

## Background

Respondent seeks to levy on petitioner's property in connection with assessed and outstanding 1995, 1996, and 1997 Federal income taxes and additions to tax and interest in the cumulative total amount of $520,099.

Petitioner apparently has a college degree from the Midwestern Baptist College located in Pontiac, Michigan, with a major in religious education. Petitioner has established a purported religious ministry under the name of Creation Science Evangelism, based in Pensacola, Florida.

Allegedly as part of his ministry, petitioner produces and sells books and recordings and travels extensively throughout the United States and occasionally in other countries giving speeches. Petitioner also hosts a daily radio talk show and has established Dinosaur Adventure Land, which is described as a

theme park, science center, and museum located in Pensacola, Florida.

The organizational structure petitioner established for the above activities, including petitioner's purported religious ministry and theme park, apparently was based on various questionable trust documents purchased from Glenn Stoll, a known promoter of tax avoidance schemes.[1]

Among other things, the trust documents petitioner utilized provide as follows:

> [a] gathering of two or more believers, in agreement with your calling, forms a lawfully established unincorporated association of pure trust. Upon a grant of value, the trust must assign beneficial interest & appoint a trustee. This trust agreement, when reduced to writing, becomes written evidence of a Ministerial Trust under which you may manage your personal ministry for the church.

Petitioner has not filed individual Federal income tax returns for 1995, 1996, and 1997.

During an audit and a criminal tax investigation that began in the early spring of 2004, respondent concluded (1) that petitioner appeared to be using the referred-to trust documents as well as various nominees and sham entities for the purpose of concealing ownership and control of his activities and

---

[1] Aspects of Glenn Stoll's tax avoidance schemes are described in United States v. Stoll, 96 AFTR 2d 2005-5044, 2005-2 USTC par. 50,459 (W.D. Wash. 2005), and United States v. Stoll, 96 AFTR 2d 2005-5052, 2005-2 UTSC par. 50,460 (W.D. Wash. 2005).

-4-

properties, and (2) that substantial revenue from the various activities with which petitioner was involved appeared to constitute income to petitioner personally.

Respondent also concluded that petitioner appeared to be planning to transfer property into the name of a nominee entity (a so-called "corporation sole") and that this planned transfer, among other things, indicated a "willful and deliberate attempt [by petitioner] to conceal the receipt of taxable income and to evade federal income taxes."[2]

Based on respondent's conclusion, on June 1, 2004, respondent made jeopardy assessments under section 6861 against petitioner of income tax, of additions to tax under section 6651(f) for civil fraud and under section 6654 for underpayment of estimated tax, and of interest, relating to 1995, 1996, and 1997, as follows:

| | | Additions to Tax | | |
| Year | Tax | Sec. 6651(f) | Sec. 6654 | Interest |
| 1995 | $44,898 | $33,674 | $2,434 | $66,985 |
| 1996 | 39,747 | 29,810 | 2,116 | 48,268 |
| 1997 | 98,941 | 74,206 | 5,293 | 94,585 |

On June 3, 2004, respondent's agent hand delivered to petitioner at petitioner's then current residence (viz, 29 Cummings Road, Pensacola, Florida 32503) a notice of the above

---

[2] The use by tax protesters of abusive "corporations sole" is well documented. See, e.g., United States v. Harkins, 355 F. Supp. 2d 1175 (D. Or. 2004); Rev. Rul. 2004-27, 2004-1 C.B. 625.

jeopardy assessments and of petitioner's right of appeal under section 7429. Upon being handed the notice, petitioner refused to accept it, whereupon respondent's agent left the notice of the jeopardy assessments on petitioner's doorstep. A copy of respondent's notice of jeopardy assessments was also delivered by respondent to petitioner via certified mail to the same address.

Also on June 3, 2004, based on the jeopardy assessments and a search warrant, respondent seized $42,817 in cash from petitioner's office, and respondent applied the $42,817 to petitioner's Federal income tax for 1995, as assessed on June 1, 2004.

Petitioner requested neither administrative nor judicial review of respondent's jeopardy assessments.

On June 4, 2004, respondent mailed to petitioner at the above address of petitioner a notice of Federal tax lien filing and right to a hearing under section 6320 (Lien Notice), which lien related to the above jeopardy assessments and which notice explained petitioner's right to a section 6320 hearing with regard to the filed Federal tax lien.

Petitioner did not request a hearing with regard to the above Lien Notice.

On July 29, 2004, respondent mailed to petitioner at petitioner's address a notice of deficiency with respect to

petitioner's Federal income taxes for 1995, 1996, and 1997, in amounts identical to the above jeopardy assessments.

Respondent's Postal Service Form 3877 certified mailing list indicates that respondent's notice of deficiency was delivered by respondent to the U.S. Postal Service for mailing to petitioner.

A U.S. Postal Service track & confirm record indicates that the above notice of deficiency was delivered to petitioner via certified mail on August 2, 2004.

Petitioner did not file a petition with this Court with respect to respondent's notice of deficiency.

On August 13, 2004, petitioner mailed back to respondent an envelope containing respondent's June 4, 2004, notice to petitioner of the tax lien filing with the words stamped on the first page "REFUSED FOR FRAUD".  Also included in petitioner's envelope mailed to respondent was a letter making various bizarre arguments, some of which constitute tax protester arguments involving excise taxes and the alleged "100% voluntary" nature of the income tax.

On February 25, 2005, respondent mailed to petitioner a final notice of intent to levy and notice of right to a hearing (Levy Notice) with regard to the balances petitioner owed on the above assessments for 1995, 1996, and 1997 and explaining petitioner's right to a section 6330 hearing with regard to the proposed levy.  Petitioner received this notice, and on March 8,

2005, petitioner requested of respondent in writing a hearing with regard thereto.

A telephone hearing with an Appeals officer located in Birmingham, Alabama, was scheduled for April 20, 2005, but was later rescheduled for May 17, 2005. On May 4, 2005, petitioner requested that the hearing be rescheduled and be relocated to respondent's Riverside, California, office, near petitioner's attorney's law office. This request was denied by respondent.

Petitioner did not participate in the May 17, 2005, telephone hearing, but petitioner did submit to respondent's Appeals Office written correspondence in which petitioner made a number of arguments relating to the amount of petitioner's underlying Federal income taxes.

In connection with the hearing, respondent's Appeals officer reviewed a transcript of account Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, relating to petitioner's Federal income taxes for the years in issue, verified that respondent's assessments were made against petitioner for the years 1995, 1996, and 1997, and concluded that respondent's proposed levy action was appropriate and not unnecessarily intrusive.

On May 25, 2005, respondent's Appeals Office issued to petitioner a notice of determination under section 6330 sustaining respondent's proposed levy action.

Petitioner timely filed a petition for review of respondent's determination.

## Discussion

Summary judgment is proper "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Beery v. Commissioner, 122 T.C. 184, 187 (2004).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of such party's pleading," but the objecting party's response "must set forth specific facts showing that there is a genuine issue for trial." Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The burden of establishing the nonexistence of a genuine issue of fact is on the party moving for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Section 6331(a) provides generally that if a taxpayer liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand it shall be lawful for respondent to collect such tax by levy upon all property and rights to property belonging to the taxpayer.

Section 6331(d)(1) requires that respondent give written notice to a taxpayer prior to making a levy on the taxpayer's

property.  Also, under section 6330(a)(1) respondent must notify a taxpayer in writing of the right to a hearing before the levy is made.[3]

In such a hearing, respondent is required to verify whether the requirements of all applicable laws and administrative procedures have been met and to consider other issues raised by a taxpayer including appropriate spousal defenses, collection alternatives, and challenges to the appropriateness of the collection actions.  Sec. 6330(c).

Under section 6330(c)(3), respondent also is required to consider whether any collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary.

Under section 6330(c)(2)(B), if a taxpayer received a notice of deficiency for a year in question and does not file a petition for redetermination of the deficiency with the Tax Court, in a collection hearing a taxpayer may not contest the existence or amount of his or her underlying tax liabilities.  Nestor v. Commissioner, 118 T.C. 162, 165-166 (2002).  Rather, to contest the underlying tax liabilities in such a situation, the taxpayer

---

[3]  Even though respondent's assessment herein was made as a jeopardy assessment under section 6861, apparently respondent's proposed levy was not made as a jeopardy levy.  See last sentence of sec. 6331(a).

would be required to pay the taxes assessed by respondent and to pursue a refund claim and a refund suit in Federal District Court.  Secs. 6511, 7422.

Also, if a taxpayer receives a notice of tax lien filing under section 6320 and does not request a hearing with regard thereto, the taxpayer may not in a subsequent hearing under section 6330 relating to a proposed levy contest the underlying tax liabilities.  Sec. 301.6330-1(e)(3), Q&A-E7, Proced. & Admin. Regs.

If respondent properly mails a notice of deficiency to a taxpayer, a presumption arises that the notice was delivered to the taxpayer in the normal course of the mail.  Zenco Engg. Corp. v. Commissioner, 75 T.C. 318, 323 (1980), affd. without published opinion 673 F.2d 1332 (7th Cir. 1981).

The act of mailing may be proven by evidence of respondent's mailing practices corroborated by direct testimony or documentary evidence of mailing.  Fed. R. Evid. 406; Magazine v. Commissioner, 89 T.C. 321, 326 (1987); Cataldo v. Commissioner, 60 T.C. 522, 524 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974); August v. Commissioner, 54 T.C. 1535, 1536-1537 (1970).

Respondent bears the burden of proving proper mailing of a notice of deficiency.  Coleman v. Commissioner, 94 T.C. 82, 90 (1990); Cataldo v. Commissioner, supra; August v. Commissioner, supra.

A U.S. Postal Service Form 3877 certified mailing list reflecting delivery of a document by respondent to the Postal Service represents direct evidence of the date and fact of mailing.  Magazine v. Commissioner, supra.

Generally, courts have held that a Form 4340 transcript of account provides at least presumptive evidence that a tax has been validly assessed under section 6203, unless irregularities are evident that raise a question as to the accuracy of the Form 4340.  Davis v. Commissioner, 115 T.C. 35, 41 (2000).

Where the validity of the underlying tax liability is not properly at issue, a court under section 6330 will review the administrative determination of the Appeals officer only for an abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).

Petitioner argues that respondent's proposed levy action is inappropriate because his correct tax liability for each of 1995, 1996, and 1997 is zero.  Petitioner argues that he received neither respondent's notice of jeopardy assessments nor the notice of deficiency relating to his 1995, 1996, and 1997 Federal income taxes, and petitioner therefore argues that he has not had an opportunity to challenge the existence and amount of the underlying tax deficiencies determined by respondent.  Petitioner seeks to do so in this proceeding.

Respondent argues that petitioner received both respondent's Lien Notice and respondent's notice of deficiency and that petitioner could have filed an appeal or a Tax Court petition with regard to either of those documents, and therefore that petitioner may not now, in the instant proceeding involving respondent's levy notice, dispute the existence or amount of his 1995, 1996, and 1997 Federal income tax liabilities. Sec. 6330(c)(2)(B).

We agree with respondent. The evidence adequately establishes that petitioner received the July 29, 2004, notice of deficiency.

The Postal Service receipt of delivery and the Form 3877 constitute strong evidence in support of the mailing by respondent and the receipt by petitioner of the notice of deficiency.

Petitioner actually had two opportunities (upon receipt of the Lien Notice -- which receipt petitioner does not dispute -- and upon receipt of the notice of deficiency) to challenge the existence and amount of his 1995, 1996, and 1997 Federal income tax liabilities. Under section 6330(c)(2)(B) petitioner may not now, in this proceeding involving respondent's proposed levy action, dispute the amounts of his underlying Federal income taxes and additions to tax for 1995, 1996, and 1997.

Petitioner argues that because the notice of deficiency was not sent with a return receipt requested respondent's mailing thereof was inadequate. Section 6212(a), however, does not require mailing of notices of deficiency with a return receipt requested. Eisenberg v. Commissioner, T.C. Memo. 1983-767, affd. without published opinion 753 F.2d 1078 (7th Cir. 1985).

Petitioner cites Brafman v. United States, 384 F.2d 863, 865 (5th Cir. 1967), and petitioner argues that because respondent's transcript of account was not signed by a proper official the tax assessments against petitioner are invalid and the proposed levy action is not appropriate. We disagree. Forms 4340 are not required to be signed. Nestor v. Commissioner, 118 T.C. 162 (2002); Nicklaus v. Commissioner, 117 T.C. 117, 121 (2001); sec. 301.6203-1, Proced. & Admin. Regs. The Forms 4340 reflecting petitioner's income tax liabilities for the years in issue indicate that those tax liabilities were assessed and remain largely unpaid.

Petitioner has not demonstrated any credible irregularity in the assessment procedures that would raise a question about the validity of the assessments.

Respondent's Appeals officer verified that the assessments of tax were proper and obtained verification that the requirements of applicable laws and administrative procedures were met.

Petitioner did not raise spousal defenses, nor did he offer collection alternatives.  We are satisfied that respondent's proposed collection action balances the need for the efficient collection of taxes with the concern that the collection action be no more intrusive than necessary.

Petitioner makes various other arguments which we have considered and which we conclude are without merit and are rejected.

For the reasons stated, petitioner's motion for summary judgment will be denied, and respondent's motion for summary judgment will be granted.

<u>An appropriate order and decision will be entered</u>.